## THE ORIENTAL ET AL. V. MAGGIE BARCLAY.

### Delivered April 3, 1897.

**1.  Cost Bond—Rule Against Attorney.**

The fact that the plaintiff in an action of damages for personal injuries, who has filed an affidavit in forma pauperis, has assigned an interest in the recovery to her attorneys in payment for their services, will not authorize a rule against the attorneys to give security for the costs.

**2.  Deposition—Seal Affixed Nunc pro Tunc.**

It was not error to allow the clerk of the court to affix his seal to a commission by virtue of which certain depositions in the case had been already taken, and to then overrule a pending motion to quash the depositions for want of a seal to the commission.

**3.  Same—Issuing Commission Within Five Days.**

Where cross-interrogatories have been filed, the issuance of a commission to take the depositions within five days from the filing of the direct interrogatories is not ground for quashing the deposition.

**4.  Same—Presence of Attorney at Taking.**

A motion to quash a deposition on the ground that the attorney for the opposite party was present at its taking and unduly influenced the evidence of the witness, presents a question of fact for the determination of the court, and is such a motion as should be acted upon at the first term after the return of the depositions.

**5.  Pleading—Allegation of Damage Not Sufficiently Specific.**

Where plaintiff's petition alleged that she had been compelled to incur liability for large sums of money to procure the services of physicians and medicine for treatment of her injuries, and would in future have to incur such expense, to her damage $2000, the allegation was insufficient as against a special demurrer based on the ground that the pleading was too general.

**6.  Remittitur.**

Error of the court in refusing to sustain defendant's exception to a certain part of plaintiff's claim for damages, because not sufficiently pleaded, can be cured by remittitur only by remitting the entire amount of such item as claimed in the petition, and not merely a part of it.

**7.  Pleading Held Sufficiently Certain—Defects in Elevator.**

See the opinion for an allegation of the defects of construction in a hotel elevator held to be sufficiently specific in an action for damages for injuries received by a fall of the elevator.

**8.  Pleading—Certainty—Names of Agents.**

A pleading by plaintiff in avoidance of a release, alleging that she signed it by reason of certain declarations made to her by defendants, their agents, servants, employes, and physicians, is defective in not alleging the names of such agents and persons.

**9.  Pleading—Amendment—Limitations.**

Where, in an action for personal injuries, the original petition sets out a substantial cause of action, an enlargement by amended petition of the allegations as to specific injuries is not affected by the statute of limitations.

**10. Damages—Evidence as to Defective Machinery.**

In an action for damages resulting from the fall of an elevator alleged to be defectively constructed, and the defects to be latent, the evidence of one who repaired the elevator six months before the accident, as to its construction and condition, is not too remote in point of time.

**11. Damages for Personal Injuries.**

In an action for damages resulting from the fall of an elevator, the fact that the elevator was insured is immaterial.

**12. Same—Evidence as to Condition of Machinery.**

Where, in an action for personal injuries resulting from the fall of an elevator, defendants' witness testified as an expert that the make of the elevator was of the best, it was proper to ask him on cross-examination if there were not first class elevators that did not have the safety attachment on the top of the elevator car.

**13. Evidence—Impeaching Witness.**

Where an impeaching witness has on direct examination qualified himself to testify on the subject, the fact that on cross-examination it was shown that his information as to the character of the impeached witness had not been derived from hearing such character spoken of generally, the court properly left the evidence to the jury, thus treating the facts elicited upon cross-examination as only affecting the weight of the evidence.

**14. Practice in Trial Court—Remarks of Judge.**

A remark of the court in admitting certain evidence, to the effect that two or three uncontradicted witnesses had already testified to the same effect, is not ground for reversal, where it is not shown that the remark was incorrect or that complainant was injured thereby; and the appellate court will not search through a voluminous record to ascertain the truth or falsity of the remark.

**15. Practice on Appeal—Bill of Exceptions.**

Where a bill of exceptions is approved with such explanations as leaves it uncertified that the recitals in the bill are true, an assignment of error based upon such bill will not be considered.

**16. Practice in Trial Court—Argument of Counsel.**

In the trial of an action of damages for personal injuries, in which the issuable facts were closely contested, plaintiff's attorney, in explaining the absence of two medical witnesses, stated to the jury that if plaintiff had a capital of $250,000, like the defendants, he could have paid the witnesses for their time, and had them present, and also stated that a verdict for defendants would send the plaintiff to the poorhouse. Held, that such remarks constituted prejudicial error.

**17. Liability of Agent—Undisclosed Agency.**

Where defendant's pleadings, in an action of damages for injury to a hotel employe, admit that it was operating the hotel under a lease from the owner, and the evidence shows that it held itself out to the world as the responsible party in the business, it can not shield itself from liability behind an undisclosed agency for such owner.

**18. Charge of Court—Burden of Proof.**

See the opinion for a charge of court held not to place upon the defendants the burden of proving that they did not know, and could not by the use of ordinary care have known, of the incompetency of one of their employes.

**19. Charge of Court—Refusal of Requested Charge.**

Where the general charge of the court treated a certain release in evidence, executed by plaintiff, as having been given for the benefit of the defendants, it was not error to refuse a special charge that the release should have the same effect as if defendants had been named in it as releasee.

**20. Practice—Argument of Counsel.**

The evidence being uncontradicted that a release of damages by plaintiff was through mistake executed to one other than the defendant, it was error for plaintiff's attorney to say to the jury that the release was no defense, as on its face it showed that it was never intended for the defendant.

**21. Tender Not Necessary, When.**

While the general rule is that in suits for a rescission the admitted consideration

received must be tendered back, yet where in an action at law for damages equitable rights arise out of a defense such as a release of the damages by defendant, and where the subject matter of the litigation is such that the court by its final judgment may give full protection without the requirement of a tender, such tender is not necessary.

### 22. Duress—Charge of Court.

A charge instructing, in effect, that certain facts would constitute duress of the plaintiff, such as to render a release executed by her void, is not error on the ground that duress, like negligence, is a matter solely for the determination of the jury, since what constitutes duress is a question of law, while the existence of the state of facts from which duress arises is to be determined by the jury.

### 23. Principal and Agent—Liability of Principal—Corporations.

Where a corporation owning hotel property put it in charge of another corporation, organized by it for the purpose, to be run by the latter merely as agent for the owner, and for its benefit, the owner is liable for the acts of the latter corporation in the management of the business.

### 24. Corporations—Collateral Attack Upon Legal Existence.

The legal existence of a corporation can not be collaterally attacked in an action of damages for personal injuries, by showing that as many as two of its incorporators did not live in this State, as required by the statute.

### 25. Charge of Court—Burden of Proof—Latent Defect.

Where the charge of the court placed the burden of proof upon the plaintiff generally to establish her right to recover, a further instruction that if the fall of the elevator, which resulted in the injuries sued for, was caused by reason of latent defects that could not prior to the accident have been discovered by the use of reasonable care, the jury should find for defendant, was not erroneous, as placing the burden on defendant of showing that the accident occurred through latent defects.

### 26. Same—Degree of Care.

An instruction that it was not required of defendant to guard against latent defects which could not have been discovered by such inspection as a reasonably cautious person would have given, and that if the elevator fell by reason of latent defects that could not have been discovered prior to the accident by the use of such care as an ordinarily prudent person would have used in defendant's position, defendant was not liable, was not erroneous, as requiring a higher degree of care than the law imposes.

### 27. Same—Ordinary Care.

A charge which makes the party running a hotel liable if the accident (the fall of an elevator) was caused by defects in its construction, independent of the question of ordinary care, is erroneous, since the test of liability was, did defendants exercise that prudence and care in furnishing and maintaining the elevator which persons of ordinary care and prudence would have exercised under like circumstances.

### 28. Authority of Head Servant—Presumption.

Where the chambermaids of a hotel were under the directions of the housekeeper, who employed and discharged them, and one of them was directed by her to use an elevator in passing from one floor to another in the discharge of her duties, and she believed in good faith that the housekeeper had authority to give such instructions, she was justified in acting thereon, although the housekeeper was in fact without such authority.

### 29. Assumed Risk—Servant Not a Volunteer, When.

Where a chambermaid in passing from one floor of a hotel to another was permitted to ride on the elevator, she is not, in doing so, to be considered as a volunteer, assuming extraordinary risks, because she was not compelled to ride thereon.

### 30. Ratification and Repudiation.

Where a woman was induced to execute a release of damages for personal injuries by fraud and the force of surrounding circumstances, such as her weak condition and necessities, a charge that she would be held to have ratified the contract of release, unless she promptly repudiated it, was erroneous, as she was entitled to a reasonable time after she was free from the influences which surounded her when she executed it, within which to make her election to repudiate or stand by the contract.

Appeal from Dallas.   Tried below before Hon. R. E. Burke.

*McLaurin & Wozencraft*, for appellant, The Oriental.—1. If a motion to compel the plaintiff in a suit to give costs is met by his oath of insolvency, and a contest of insolvency is made by defendant showing that plaintiff had assigned and transferred to his attorneys of record in the case a large interest in the cause of action and in any judgment that may be recovered thereon, then the motion should be sustained, and the suit dismissed in the absence of security for costs being given by the attorneys. Ray v. Wooten, 30 S. W. Rep., 684; Rev. Stats., arts. 1440, 1442, 4647.

2.  Where the plaintiff's attorney was present while a deposition upon written interrogatories was being taken in the case, and interfered with and influenced the taking of the deposition, and by his presence and conduct confused the witness, and so affected the result as to cause other and different answers to be given than would otherwise have been given, and to the injury of defendant's case, a motion to suppress such deposition should be sustained.   Parker v. Chancellor, 73 Texas, 479; Schunior v. Russell, 83 Texas, 90.

3.  A special exception should be sustained to that part of a petition where, in an action for damages for personal injuries, the plaintiff claims damages in a sum of money stated in gross for doctors' bills, medicines, etc., and the special exception objects that this demand is not itemized. Boynton v. Chamberlain, 38 Texas, 605; Smith v. McGehee, 1 W. & W. C. C., sec. 94; Fry v. Hilliam, 37 S. W. Rep., 359.

4.  The fact that this appellant had an accident policy protecting, or partially protecting, it in the payment of the judgment that might be rendered against it in this case, was immaterial, and tended to prejudice the jury against this appellant's case, and the court erred in admitting such testimony over this appellant's objection.   Guess v. Lubbock, 5 Texas, 536; Express Co. v. Darnell, 62 Texas, 639.

5.  A master is not bound to furnish to his servants machinery with modern appliances or that which is absolutely safe, but is only bound to use reasonable diligence in the selection of his machinery to furnish that which is safe.   See authorities next above.

6. An agent is personally liable to third person for his own misfeasance and positive wrong, but he is not liable to third person for his own nonfeasance or omission of duty in the course of his employment, and if this appellant, the Oriental, was, as charged by appellee in her petition, the agent of appellant, the Oriental Investment Company, in the operation of said hotel, the evidence would not warrant a verdict against this appellant.   2 Thomp. on Neg., 1059; Harriman v. Stowe, 57 Mo., 93.

7.  As appellee seeks to avoid the release on the ground that it was procured to be executed and delivered by force, fraud, threats, duress, and undue influence, it is necessary, upon special exceptions, that her pleadings should specifically show by whom, when, and by what authority such force, threats, fraud, duress, and undue influence were used,

in what they consisted, and under what circumstances they were used, so that this appellant might have been fully advised of what it was required to answer. 2 Pom. Eq. Jur., secs. 876, et seq.; State v. Galveston, 38 Texas, 12, 34; Baines v. Mensing, 75 Texas, 200.

8.  Plaintiff's claim for damages for the injuring and bruising of plaintiff on her head was barred by the statute of limitation of twelve months, as no such claim was made in any of plaintiff's pleadings filed within twelve months from the date of the accident, and the above exception should have been sustained. Rev. Stats. 1879, art. 3202; Railway v. Thompson, 37 S. W. Rep., 24.

9.  The testimony of a witness can be impeached only by the testimony of witnesses who know his general reputation in the community in which he lives, or has lived, for truth and veracity, and the testimony of witnesses who showed that they did not know such general reputation should have been stricken out by the court upon motion. Kennedy v. Upshaw, 66 Texas, 442.

10.  Where an accident is alleged to have been caused by the negligence of a fellow-servant, and it is claimed that such fellow-servant was incompetent, the burden of proof of defendant's knowledge of such incompetency is upon plaintiff. Railway v. Bradford, 66 Texas, 735; Railway v. Johnson, 83 Texas, 633; Railway v. Crowder, 63 Texas, 502; Railway v. Christman, 65 Texas, 369; Railway v. Whitemore, 58 Texas, 277, 286; Railway v. Hinder, 30 S. W. Rep., 399.

11.  Counsel for appellee having attacked the release set up as a defense by this appellant in his argument to the jury, on the ground that it showed on its face that it was not intended for this appellant, but was given to another and a defunct corporation, and the court having stated that such comment was legitimate, and that it was admitted that the Oriental Hotel Company was a dead corporation, the court should have given to the jury the special instruction asked by this appellant, instructing the jury that they should consider that said release was made in favor of and for the benefit of this appellant, the same for all purposes as if it had been made in this appellant's name, because appellee had filed no plea of non est factum, nor any plea, contending that the release was not executed for the benefit of the appellant. McHenry Coal Co. v. Snedden, 34 S. W. Rep., 228; Railway v. Jones, 73 Texas, 232; Water-works Co. v. Harris, 23 S. W. Rep., 46; Oil and Cotton Co. v. Davenport, 37 S. W. Rep., 624.

12.  It was error for counsel for plaintiff, in the closing argument to the jury, to make statements not borne out by the record that plaintiff could have procured other testimony if he had had the money, and to make the statements concerning the wealth of the defendants against whom damages are sought, and to appeal to the prejudices and sympathies of the jury by stating that if she does not recover damages it means the poorhouse, a life of misery and poverty and distress to her; and the court should have granted a new trial on account of such statements, especially where the verdict is excessive. See authorities last above cited.

13. The burden of proof is upon the servant, when seeking to recover damages against the master for defective machinery, to show that the machinery was defective, and that the master either knew of it or by the use of reasonable diligence, care, and prudence would have known it. Railway v. Hinder, 30 S. W. Rep., 399; Railway v. Bradford, 66 Texas, 735; Railway v. Johnson, 83 Texas, 633.

14. The question as to whether the release was secured by force, threats, fraud, duress, or coercion was purely a question of fact for the jury, and it was error, and a charge upon the weight of evidence, for the court to charge the jury as a matter of law, as set out in the above assignments of error, that "if you find and believe from the evidence that this release was executed by plaintiff under the circumstances and in the manner alleged and detailed by her, then, if you so find, same would not be binding upon her." Sayles' Civ. Stats., art. 1317.

15. A person giving a release which is secured by fraud, threats, force, duress, or coercion, and receiving a valuable consideration therefor, may not wait until he is entirely free from all environments which caused him to sign the release to repudiate same and pay back the consideration, but must do so as soon as he is sufficiently free to exercise his freedom of will; and the court's charge that appellee must promptly disaffirm and repudiate the release after she got free from the environments by which she alleged she was surrounded at the time of its execution was incorrect.

16. A release for a valuable consideration of a cause of action sounding in tort operates as a merger of the cause of action to such an extent, even where the release has been procured through fraud and duress, or is illegal, that the releasor, as a condition precedent to his right of recovery upon the cause of action so released, either before or contemporaneously with his institution of suit upon the cause of action so released, must repay or make actual tender to the releasee of every valuable thing received by him as a consideration for the release. Hence it was error for the court to refuse this appellant's special charge, and to refuse to grant a new trial. Stewart v. Railway, 62 Texas, 246; Hunt v. Turner, 9 Texas, 388; Goldfrank v. Young, 64 Texas, 432; Grabenheim v. Blum, 63 Texas, 639; Houston v. Killon, 86 Texas, 308; Rankert v. Clow, 16 Texas, 12; Herman v. Heffenegger, 54 Cal., 161; Ins. Co. v. Howard, 111 Ind., 545; Gould v. Bank, 86 N. Y., 75; Kinnie v. Webb, 49 Fed. Rep., 512; Baker v. Railway, 65 Fed. Rep., 460; Vandervelden v. Railway, 61 Fed. Rep., 54; Graham v. Meyers, 99 N. Y., 611.

17. A release of a cause of action, although obtained through fraud and duress, is not void, but voidable at the option of the releasor. It may be ratified by, and acquiesced in by the party overreached, but until repudiated and legally avoided by the party defrauded, it is obligatory on all parties to the release. Murchison v. White, 54 Texas, 78; Railway v. Brazzil, 72 Texas, 239.

Voidable contract: Pollock Contr., 506; 2 Pom. Eq. Jur., sec. 915; Wait Fraud. Conv., sec. 420; 5 Lawson R. and Rems., sec. 2368; 21 Am. and Eng. Encyc. of Law, 43.

Avoidance of contract: Stewart v. Railway, 62 Texas, 246; Hunt v. Turner, 9 Texas, 388.

18.   A person who has executed and delivered a release of his cause of action for a tort, and who seeks to avoid and disaffirm such release on account of fraud or duress, must repudiate the same promptly upon discovery of such fraud and release from such duress, otherwise the same will be held to have been ratified.   Brazzil v. Railway, 78 Texas, 314; Id., 73 Texas, 241; Grabenheim v. Blum, 63 Texas, 369; Stewart v. Railway, 62 Texas, 246; Grymes v. Sanders, 93 U. S., 55; McLean v. Clapp, 141 U. S., 429; Swain v. Seamens, 9 Wall., 274; Gould v. Bank, 86 N. Y., 82; Bishop on Contr., secs. 829, 832.

*Philip Lindsley* and *McCormick & Spence,* for appellant, Oriental Investment Company.—1.   The validity of the incorporation of "The Oriental" can not be investigated in this suit.   The legality of a corporation as a corporation can not be determined in a collateral proceeding, and can not be affected by the manner in which it conducts its business or the adequacy or inadequacy of its assets.   Rev. Stats., arts. 645, 646; Bank v. Furniture Co., 74 Texas, 422; McCauley v. Long, 61 Texas, 79; 2 Waterman on Corp., 637-639; Railway v. Goldman, 87 Texas, 57; Tel. Co. v. Motley, 87 Texas, 40; Railway v. Greenlee, 62 Texas, 349.

2.   In the absence of fraud or deceit by the landlord to the tenant as to the condition of the leased premises at the date of the lease, the lease binding the tenant to keep in repair, the landlord is not liable in a suit by the employe of the tenant for an injury to the employe occurring from the defective condition of the leased premises.   Perez v. Rabaud, 76 Texas, 191; Railway v. Mangum, 68 Texas, 342; Marshall v. Heard, 59 Texas, 267.

3.   Where an amended pleading sets up an essentially different cause of action from the one alleged in the original petition, limitation continues to run until the filing of such amendment.   In this case no recovery could be had by plaintiff without a vacation and setting aside of the release; therefore, the statute of limitation ran against plaintiff's cause of action until the amended original pleading was filed.   Railway v. Scott, 75 Texas, 84; Williams v. Randon, 10 Texas, 80.

4.   The duty of a master to his servant to furnish safe machinery, keep it in repair, inspect it for defects, and employ competent servants, is one of ordinary care; this duty is discharged when a master uses reasonable diligence.   Railway v. Crenshaw, 71 Texas, 345; Railway v. Johnson, 83 Texas, 628; Nix v. Railway, 82 Texas, 473; Railway v. Hoffman, 83 Texas, 268; Railway v. Bell, 75 Texas, 50.

5.   A contract obtained by duress, but supported by valuable consideration, is not void but voidable only; and if the person coerced, after the pressure is removed, elects to ratify the contract and does acts amounting to a ratification, the contract becomes valid ab initio, and no subsequent change of intent can, in law, affect the rights of the parties thereto.   Railway v. Brazzil, 72 Texas, 233.

6. The testimony of the witness Stewart as to the condition of the elevator in July and August of 1893 was not relevant testimony, because other facts in evidence show that during those months the hotel, which had never been run as a hotel, was being overhauled and repaired for the purpose of opening up for business. The fact that the elevator was then out of repair did not tend to prove that the same was out of repair January 26, 1894, when the hotel had in the meantime been leased and operated as a hotel for five months. Railway v. Whittaker, 68 Texas, 634; Reed v. Railway, 46 N. Y., 580; Morrisey v. Ingham, 111 Mass., 63; Sloan v. People, 47 Ill., 76; White v. Graves, 107 Mass., 325.

*Parks & Carden*, for appellee.—1. When a plaintiff suing for tort assigns to his attorneys an interest in the cause of action declared upon, the attorney does not become a necessary party to the suit by reason of such assignment, and said attorney can not be made a party to the suit upon motion of the adverse party, it being only parties to suits against whom a motion can be maintained for costs bond in a suit. Rev. Stats., arts. 1435, 1436; Railway v. Scott, 28 S. W. Rep., 457; Winston v. Masterson, 87 Texas, 200.

2. The court out of which a commission to take a deposition issues has the right, at any time before the deposition taken upon the commission so issued is read, to have the clerk of said court, under the court's direction, place the seal of the court upon the commission, where it is made to appear to the court, upon motion of the party taking the deposition, that the commission was issued by the clerk without the seal first having been attached. Creager v. Douglass, 77 Texas, 484; Irvine v. Bevil, 80 Texas, 332; Byington v. Wood, 62 Iowa, 470.

3. The court did not err in overruling the motion to suppress the deposition of A. M. Stewart; the appellants having pleaded that the defects in the elevator and its appurtenances that caused the accident were latent defects and unknown to appellants, and could not by the use of ordinary care and diligence have been known to appellants prior to the accident, the said questions and answers were admissible to bring knowledge of said defects home to appellants prior to the accident. Railway v. Measles, 81 Texas, 474; Railway v. De Milley, 60 Texas, 194; Paris Gas Light Co. v. McHamm, 2 White & W. C. C., sec. 654; Malone v. Hawley, 46 Cal., 409; Hunt v. City of Dubuque, 65 N. W. Rep., 319.

4. The pleading of a release by a defendant in a case where plaintiff sues for damages on account of personal injuries, and the failure on the part of the plaintiff to plead non est factum as to release under oath, does not preclude the plaintiff from showing that there was no consideration, or that the consideration was paid by persons other than the defendant, where the plaintiff has pleaded that there was no consideration for release. Heath v. State, 14 Texas Crim. App., 213; Dewees v. Bluntzer, 70 Texas, 406.

5. In an action by a servant of the lessee for personal injuries caused by a defective condition of the elevator in the building of the lessor

which the lessee had the privilege of using, and received while the servant was using the elevator, by reason of its falling, the petition need not set out in what way the elevator was defective. Ellis v. Waldron, 33 Atl. Rep., 869; Railway v. Hennessey, 75 Texas, 155; Railway v. Brinker, 68 Texas, 502; Williams v. Railway, 60 Texas, 206.

6. A person owning and operating an elevator for the purpose of having employes ride thereon in the discharge of the duties they owe their employer, must furnish a safe elevator for said purpose, and must use the highest degree of care which human foresight can suggest, not only as to the conduct of his servants but as to the condition of the machinery. Mitchell v. Marker, 62 Fed. Rep., 139; Goodsell v. Taylor, 41 Minn., 209 (42 N. W. Rep., 873); McGongle v. Kane, 20 Colo., 292 (29 Pac. Rep., 367); Hotel Co. v. Camp, 39 S. W. Rep., 1010; Treadwell v. Whittier, 80 Cal., 595; Lee v. Knapp, 55 Mo. App., 390; Machine Co. v. Burandt, 136 Ill., 170; Seley v. Railway, 2 Am. Ry. Cases, 153; Mantel v. Railway, 33 Minn., 62 (21 N. W. Rep., 853); Malone v. Hawley, 46 Cal., 409; Webb on Elevators, secs. 14, 32.

7. The allegations of plaintiff's petition filed within the twelve months were sufficient to cover an allegation of the injuring and bruising of plaintiff on her head. Railway v. McManewitz, 70 Texas, 73.

8. When the plaintiff had shown that the elevator had fallen with her, and shown that the elevator and its machinery was in the possession and under the control and management of the appellants, and not subject to her examination, and appellants having pleaded that the defects were latent defects, and that the accident was a casualty, the burden of proof was upon the appellants to show that the defects were latent and that the accident was a casualty in order to defeat liability, its means of information upon that subject being superior, under the peculiar circumstances of the case, to that of the plaintiff. Railway v. Lauricella, 87 Texas, 277; Railway v. Lavine, 87 Texas, 437; Treadwell v. Whittier, 80 Cal., 582; Railway v. Hennessey, 75 Texas, 157; Railway v. Brinker, 68 Texas, 502; Williams v. Railway, 60 Texas, 206.

9. The release having been procured to be executed by reason of duress, it was absolutely void, and being void, no tender was necessary as a prerequisite to a recovery. Dimmitt v. Robbins, 74 Texas, 441; Landa v. Obert, 78 Texas, 33; Foshay v. Ferguson, 5 Hill, 154; Barrett v. French, 1 Conn., 354; Waldbridge v. Arnold, 21 Conn., 423; Burr v. Burton, 18 Ark., 231; Butler v. Collins, 12 Cal., 457.

FINLEY, Associate Justice.—The general statement of the nature of the case contained in the brief of The Oriental Investment Company, appellant, is sufficiently accurate and full to render the points discussed in the opinion clear, with the aid of the further statements made in the opinion. We will therefore use such statement:

This suit was originally brought by plaintiff below, Maggie Barclay, against the defendants, the Oriental Hotel Company, a Texas corporation, and W. J. Alden, a resident of Dallas, Texas. By amendment,

plaintiff also sued The Oriental, a Texas corporation, and The Oriental Investment Company, a St. Louis, Mo., corporation. Subsequently, the suit was dismissed as to the Oriental Hotel Company.

This suit is against these three remaining defendants for an alleged joint tort alleged to have been committed by defendants in the operation of a freight elevator in the Oriental hotel, at Dallas, upon which plaintiff was riding at the time it fell and injured her, all three of the defendants alleged to have been at the time jointly operating said hotel and elevator. Plaintiff alleges that on January 26, 1894, and prior thereto, the defendants were operating the hotel in Dallas, Texas, known as the Oriental hotel. That plaintiff was then in the employ of the defendants as chamber-maid; that as such it was her duty to go upon all the floors of the hotel with linens, bed clothes, etc.; that said hotel contained six floors, all connected by an elevator known as a freight elevator, but which was in fact both a freight and a passenger elevator, upon which the linens, etc., and passengers were carried to and from the different floors, and upon which plaintiff was permitted and required to ride in carrying linen, etc., to and from the different floors; that said elevator was negligently, improperly, and unskillfully constructed by defendants, and out of repair, as was the engine connected therewith; that the operator of said elevator was incompetent, inexperienced, unskillful, and grossly negligent in the performance of his duties, and that the defendants were aware of the same; that by reason of all of which said elevator, on January 26, 1894, while plaintiff was in the same in the discharge of her duties as chambermaid, fell from the top story, some 100 feet, to the ground floor, breaking plaintiff's leg, permanently injuring it, and inflicting other injuries upon her on other portions of her body. That defendants, while she was in almost a dying condition, through threats, fraud, etc., compelled plaintiff to sign a release of her damages for said injuries; that said release was wholly without consideration, and she, for the first time, asks the cancellation of said release in her first supplemental petition, filed November 22, 1894, and there is the first reference by plaintiff in any of her pleadings to said release.

Plaintiff claims $50,000 damages for said alleged injuries against all three defendants. She further sues for $2000 for past and future medicine and doctor's bills she claims to have become or will become liable for. Plaintiff alleges that defendants knew, or by the use of ordinary care could have known, of the defective construction and condition of said elevator; and that plaintiff was ignorant of the same, and that she was in the exercise of due care at the time said elevator fell, and that it fell without any negligence on her part. That at the date of her alleged injury she was about 25 years old, working for defendants at about $35 per month and board; and that by reason of the negligence of the defendants she has been deprived of her only means of support. Plaintiff prays that said release be set aside, and that she recover judgment, etc.

There is also a second count to plaintiff's petition, wherein she also sues the three defendants, The Oriental, W. J. Alden, and The Oriental

Investment Company, making against them all and singular the same allegation as in the first count, and adding thereto as follows: That on November 29, 1892, the Oriental Investment Company of St. Louis, Missouri (which will be designated hereafter in this statement as the St. Louis corporation), bought the Oriental hotel property in Dallas, with intent to run a hotel thereon, the said property on that date being worth $800,000, and. the furniture and fixtures subsequently bought worth $150,000, and the monthly expense of running hotel $40,000 per month, and that it requires a capital of $150,000 to run said hotel; that prior to the purchase of said hotel, the Oriental Investment Company became incorporated under the laws of Missouri, its incorporators being William F. Nolker, Louis Brinchwith, Frank Roseman, Herman A. Haussler, Mrs. Elizabeth Schnaider, Marquard Foster, Moses Greenwood, Jr., F. Harald, August Gehner, and Adolphus Busch, and all citizens of St. Louis; its capital stock, $250,000; that the purpose for which it was formed was "to purchase, own, and rent buildings erected for pecuniary profit and gain." That on September 30, 1893, "The Oriental," a corporation, was organized under the laws of Texas, its corporators being W. J. Alden, Louis Reichenstein, A. T. Stevens, residents of Dallas, Texas, and Adolphus Busch, Louis Brinkwith, August Gehner, and H. A. Haeussler, of St. Louis, Missouri, and its purpose, as stated in its charter, being the establishment and maintenance of a hotel, and its directors the first year were Reichenstein, Stevens, Alden, Busch, Brinkwith, Gehner, Haeussler; that its capital stock was $10,000, in shares of $100 each. (The Oriental is referred to hereafter in this statement as the Texas corporation.) That on September 30, 1893, the St. Louis corporation, by a pretended lease, put the Texas corporation in possession of said hotel premises; that if said Texas corporation was in possession of said hotel as the lessee of the St. Louis corporation on January 26, 1894, under a lease which bound the lessee to repair, that still the St. Louis corporation is liable to the plaintiff; that while the lease binds the lessee to repair, yet it was agreed between the two corporations that the St. Louis corporation should keep said hotel in repair; that since the execution of said lease the St. Louis corporation has made and paid for improvements on said hotel, costing some $60,000; that Alden, Stevens, and Reichenstein subscribed for stock in the Texas corporation for the benefit of the St. Louis corporation, and that they had never paid for their stock, and never had stock issued to them until after January 26, 1894; that Alden was not a resident or citizen of Texas at the formation of the Texas corporation; that the stockholders of the St. Louis corporation procured the three corporators of the Texas corporation to join in its formation to escape liability and to practice fraud upon the laws of Texas, and was contrary to public policy; that the St. Louis corporation or its stockholders paid for the stock in the Texas corporation of Alden, Stevens, and Reichenstein, and that the stockholders of the former owned all of the stock in the latter, and have in fact run the latter in the interest of the former; that the directors of the Texas corporation have never had a meeting at

which Alden, Reichenstein, or Stevens attended, nor have the latter ever had anything to do with the management of the hotel, but that it has in fact been operated by the St. Louis corporation, and all its needed supplies furnished by it; that at the date of the delivery of possession of said hotel to the Texas corporation by the St. Louis corporation, the freight elevator therein was in dangerous condition and a nuisance, and so known to be by the latter, and that the latter knew that the Texas corporation would use it to carry chambermaids on; that the Texas corporation, at the date of the lease, did not know of the faulty construction and bad condition of the elevator; that the St. Louis corporation acted with fraud and deceit to the Texas corporation in the execution of said lease, and that the Texas corporation relied upon the representations of its lessor, and believed them to be true. Then plaintiff right here alleges said lease was made after said injury to plaintiff occurred, and was fraudulently antedated to shield the St. Louis corporation from liability, and that said lease is void, and that the charter of the Texas corporation is a fraud, but if a valid corporation, then it acted as the agent of the St. Louis corporation, and that both are liable to plaintiff.

Appellant, The Oriental Investment Company, interposed the following defenses: (1) general demurrer and special exceptions, given in full in assignments of error; (2) general denial; (3) special answer, in which it admits it is owner of the said hotel property; that it is a Missouri corporation, formed for the purposes stated in plaintiff's petition; that The Oriental was incorporated for the purposes alleged by plaintiff; it alleges that those who became its incorporators had made a loan of $250,000 with which to build said hotel, and had to foreclose the mortgage which secured the loan; that at the sale it was bid off by H. A. Hauessler in their interest, and by him conveyed to the St. Louis corporation. It denies that it acquired the property with intent to operate a hotel thereon, and never did intend to run a hotel, and never incorporated for any such purpose; denies that the property was worth one-third of $600,000, or its furniture and fixtures one-half of $150,000; denies that it ever formed a pretended corporation, The Oriental, or that it ever pretended to lease said hotel to the Texas corporation; denies it was ever agreed that it should repair said hotel, or that it had improved it after the lease as charged; denies it has any interest in the hotel, except as lessor; denies plaintiff ever was in its employ; denies said elevator was both a freight and passenger elevator, but alleges it was exclusively a freight elevator, and denies the operator of the elevator was ever in its employ. It alleges that on October 10, 1893, it leased from October 1, 1893, said hotel premises to its codefendant, The Oriental, which lease expires June 1, 1896; that as rental therefor The Oriental is to pay $18,000 per annum, taxes and insurance, and to make all repairs; that under said lease it delivered to its said lessee possession of said hotel, and that said lessee has been in the exclusive management, control, and possession of the same ever since, and that on January 26, 1892, the date of plaintiff's alleged injury on said elevator, it was not in possession or control of said hotel property, and

had nothing to do with its operation; (4) it pleaded a written release, executed by the plaintiff for a valid consideration to The Oriental for all damages arising from said injury; (5) that plaintiff's said original cause for action had been merged in said release, and that said release had been subsequently ratified by plaintiff; (6) that plaintiff was guilty of contributory negligence; (7) that plaintiff's cause of action was barred by the statute of limitations. These last four defenses were pleaded by the adopting by this defendant of the defenses to that effect made in the answer of The Oriental.

This defendant's codefendant, The Oriental, answered (1) by general and special exceptions; (2) general denial; (3) a written release to it by plaintiff of all claims for damages by reason of said elevator accident, in consideration of $150 and other considerations, the latter being board and lodging at The Oriental's cost in the hotel until she recovered from her injuries, and payment of doctor, medicine, and nurse's bills, which last The Oriental paid to the aggregate amount of $284.30; (4) that plaintiff's cause of action is merged into, surrendered, and barred by said release, and that plaintiff, after its execution, ratified and confirmed said release, and so purged it of the fraud and duress she alleges The Oriental was guilty of in its procurement; (5) the statute of limitations of twelve months; (6) that it is not, and was not at the date of said accident, the owner of the elevator on which said injury to plaintiff is alleged to have occurred; but that it is, and was at the time of said accident, and long prior thereto, and ever since has been merely a tenant of said hotel, renting the same from the defendant, The Oriental Investment Company; that along with said hotel it rented, and still rents, and did at the date of said accident, rent and pay said stipulated rental price for said elevator, and all the fixtures and attachments belonging thereto, to said hotel; that at the time it so rented said hotel, the elevator was situated therein; that said elevator appeared to this defendant to be a good and sufficient elevator, and seemed to be in good repair; and at all times prior to said accident this defendant used every reasonable means in its power to keep said elevator in good repair and condition; that if plaintiff ever received the damage complained of by reason of any defect in said elevator or its connections, the same was caused by some latent defect, and one which this defendant could not discover by the use of any caution or prudence at its command; that said elevator was frequently inspected and was at all times reported to be in good and perfect repair, and that at the time of said accident this elevator had been recently inspected and had been reported to this defendant to be in good repair and good working order; (7) a plea of contributory negligence, in that said elevator was exclusively a freight elevator, as the plaintiff well knew; that plaintiff, as a servant of said hotel, was by its rules, of which plaintiff had knowledge, prohibited from riding on said elevator; that in the use of said elevator plaintiff was a volunteer and trespasser, and assumed all risk while upon it.

The defendant, W. J. Alden, interposed defenses as follows: (1) special exceptions; (2) general denial; (3) special answer, that The Oriental, a

corporation, was formed for the establishment and maintenance of a hotel; that he was a director and stockholder therein to the extent of $100; that he was its manager at the date of plaintiff's injury; (4) he adopts the special defenses of The Oriental.

The court overruled all of appellants' special exceptions, and thereupon there was a trial by jury, which resulted in a verdict and judgment in favor of the defendant W. J. Alden, and in favor of the plaintiff below, Maggie Barclay, against appellants, the Oriental Investment Company and The Oriental, for the sum of $15,000. The verdict of the jury is as follows: "We the jury find for the plaintiff, Maggie Barclay, against The Oriental Investment Company and The Oriental, the sum of fifteen thousand dollars ($15,000), less four hundred dollars ($400), to be deducted for expenses incurred for board, care, and treatment of plaintiff while she was at the hotel."

*Opinion.*—The following questions arise upon the record, and are presented for our consideration and decision:

1. Before the trial plaintiff assigned to her attorneys in payment for their services an interest in the recovery. The plaintiff filed an affidavit in forma pauperis, and defendants sought a rule against the attorneys to give security for costs. The court did not err in refusing to rule the attorneys for costs. Rev. Stats., Arts. 1440-1442; Railway v. Scott, 28 S. W. Rep., 457; Winston v. Masterson, 87 Texas, 200.

2. Motion was made by The Oriental, defendant, to quash the depositions of witness George A. Hutchins, upon three grounds: (a) the commission was without the seal of the court; (b) the commission was issued in less than five days after the direct interrogatories were filed; (c) that one of plaintiff's attorneys was present when the deposition was taken, and improperly interfered with and influenced the testimony of the witness.

The commission having been issued by the clerk of the court trying the case, and the deposition of the witness having been taken under such commission, the failure to place the seal upon the commission was a mere irregularity which could not have worked an imposition, and it was not error to allow the clerk to place the seal upon the commission and refuse to quash the deposition on this ground. Creager v. Douglass, 77 Texas, 484; Irvine v. Bevil, 80 Texas, 332.

The fact that the commission issued within five days from the time of filing the direct interrogatories, at the instance of the plaintiff, who had filed cross-interrogatories to the witness, furnishes no ground upon which The Oriental could reasonably ask the suppression of the deposition.

As to the ground that plaintiff's attorney was present at the taking of the deposition and unfairly influenced the evidence of the witness, it is sufficient to say that an issue of fact was raised upon this objection to the deposition, and the evidence justified the court in determining that the allegation was not true. McCamant v. Batsell, 59 Texas, 363.

It is also proper to observe that the motion was not acted upon at the

first term after the taking, return, and filing of the depositions, as required by our statute in article 2289.

3. Plaintiff alleged in her petition that she had been compelled to incur liability for large sums of money to procure the services of physicians and medicines for treatment of her injuries, and would in future have to incur such expense, to her damage $2000.

The defendants excepted specially to this allegation of damage, upon the ground that it was too general to furnish proper notice to defendants of the facts intended to be established thereunder. This exception is well taken, and should have been sustained.

Plaintiff offers to remit $38 to cure this error, if considered error by the court, upon the theory that she only proved that amount of doctor's and medicine bills, and therefore that the jury only allowed that amount. It is true that she only proved Dr. Rosser's bill of $38, but there was evidence showing her treatment by other physicians, and use of medicine. We can not say that the jury stopped at this sum; they may have allowed for other treatment and medicines shown, and may also have included expense of that character in the future. To cure such an error by remittitur, the entire sum claimed under this allegation of damage, to wit, $2000, would have to be remitted. Fry v. Killon, 37 S. W. Rep., 359.

4. It is contended that the defects of construction alleged to exist in the elevator were not sufficiently specific, and that special exceptions directed thereto should have been sustained. The part of the pleading excepted to is as follows: "That the said elevator was negligently and improperly constructed by the said defendants; was constructed without any of the modern appliances; was constructed without stops, brakes, resters, safeties, and grabs to catch the same going up or going down; was constructed without sufficient cables by which to lift or to lower the same; was constructed without properly attaching the cables thereof to the drum or cylinder; was constructed without properly fastening the cables to the drum rod or drum around which the cable winds while the elevator was being operated; was constructed without a sufficient automatic governor to control the power by which said elevator was run and operated, and was generally constructed in an unsafe and in an unsubstantial way."

We think the allegations were sufficient. Railway v. Hennessey, 75 Texas, 155; Railway v. Brinkler, 68 Texas, 502; Ellis v. Waldron, 33 Atl. Rep., 869.

5. The Oriental specially excepted to plaintiff's petition, because it was not sufficiently specific in the following portion thereof: "Plaintiff further represents and shows to the court, under oath, that the defendants, through threats, force, fraud, undue influence, and duress, compelled this plaintiff to sign and execute a pretended release of her damages claimed in this case, on or about the 30th day of January, 1894; that said release was prepared by the defendants and signed about four days after the accident hereinbefore alleged occurred to her, while plaintiff was at defendant's hotel, and while the plaintiff was suffering great phys-

ical pain and mental anguish from and on account of her injuries received from the falling of the elevator in said hotel, and while she was not sufficiently self-possessed, and too weak mentally to consider and contemplate the consequences thereof, and while she was penniless and away from her friends, with no one to advise her as to her true interest, and while she was being told and advised by the defendants, their agents, servants, employes, and physicians, that if she did not sign the release that the defendants would put her out of the hotel immediately, and that it would kill her to be then removed from the hotel in her feeble condition. That plaintiff could not think of failing to sign said release and of fighting a big company like that was (meaning that defendant, Oriental Investment Company, was too rich and powerful to be fought by the plaintiff); that Mr. Alden had a St. Louis lawyer that he paid by the year, and that this lawyer understood the law too well for Texas lawyers, and that all Texas lawyers were quacks, and that plaintiff had no money and could not get any advice from a lawyer for less than $50; that if plaintiff failed to sign the release the defendants would put her out of the hotel without regard to what might become of her; that the money offered her for the release was not offered because defendants were compelled to offer it, but because Mr. Alden felt sorry for the plaintiff."

One of the special exceptions was directed at that portion of the pleading which alleges that the agents, servants, employes, and physicians of defendants said certain things to her, calculated to frighten and unduly influence her. It was objected that the pleading should have been more specific as to the agents from whom the remarks alleged emanated.

The allegation as to the source of the remarks and acts set out as constituting undue influence, fraud, and duress, is quite general. Our system requires the facts to be pleaded. It was necessary to set out the facts relied upon as constituting the fraud and duress, to avoid the release. The facts undertaken to be set out consisted in part in the declarations of persons alleged to be agents, servants, etc. The allegations should have more particularly designated the agents who it was intended to be shown were the persons saying the things sought to be charged against the defendants. Lewis v. Hatton, 86 Texas, 534.

6. The allegation that plaintiff's head was bruised and injured was made for the first time in the amended pleading, and it is claimed that the statute of limitations barred a recovery of damages therefor. The enlargement of the allegations as to the specific injuries received, where the substantial cause of action has been originally pleaded, as in this case, is not affected by the statute of limitations. Railway v. Davidson, 68 Texas, 370.

7. Witness Stewart was permitted to testify that he did the work of repairing the elevator in July or August, 1893, and to facts tending to show that the elevator was unskillfully constructed, dangerous, and in bad repair. He further stated that he had not seen it since that time, until after the accident.

It is urged by appellants that the period covered by the knowledge of

the witness was too remote from the date of the accident, it being about six months prior to the accident, to furnish any light upon the question of the condition of the elevator at the time plaintiff received her injuries. There was an issue as to the proper construction of the elevator, as well as to its condition of repair, and the testimony bearing upon the construction was unquestionably admissible. We also think the testimony as to the condition of the machinery was admissible. It was quite remote in time, to be sure, but the machinery during the intervening period was in the possession of the defendants, and they could easily show any change which had been effected since the time the witness made the examination. The time was not so remote, under the circumstances of this case, as to authorize the exclusion of the evidence, and we think the objection bears more directly upon the weight than the admissibility of the evidence. The court instructed the jury not to consider the testimony of this witness, unless other evidence showed that the machinery was in practically the same condition at the time of the accident. It may be further remarked that one of the defenses was that the defects in the machinery were latent and could not be discovered by the exercise of proper care. The evidence tended to refute this contention.

8. It is insisted that the court erred in permitting the evidence of the witness Stephens, to the effect that a policy of insurance was carried upon the elevator.

An inspection of the bill of exceptions discloses the fact that it is not made to appear in the bill that the evidence was introduced, and the terms of the bill are entirely too general in relation to the evidence. It is not more specific in character than the proposition above announced. Under such a bill of exceptions we can not determine that there was error committed. We are, however, unable to see any bearing or pertinency of such evidence to the issues involved in this case.

9. It is made to appear by bill of exceptions that plaintiff's counsel introduced witness Edwin Shelby, and stated to the court that it was desired to prove by the witness that The Oriental "was not interested in the matter of settlement and the obtaining of the release from plaintiff, and that said defendant did not pay one cent of the expenses that accrued by reason of the obtaining of said release, and that the same was obtained by expenditures made by the Casualty Company."

The Oriental objected to this statement upon the grounds (1) that the counsel had no right to state what he expected to prove by the witness; (2) it was immaterial who paid the consideration for the release; (3) the statement was calculated to prejudice the jury and lead them to believe without evidence that the defendant had not paid a valuable consideration for the release.

Upon the presentation of these objections, the trial judge remarked that "one of the issues in this case is as to who paid the money out as expenses for care and attention at the hotel, and this issue is for the jury to decide." The defendants objected to the language of the court, be-

cause (a) no plea of non est factum to the release had been filed by plaintiff; (b) there was no plea that the consideration for the release was paid by any other person than the defendant; (c) it was immaterial who paid the consideration; (d) it tended to make the jury believe that if the defendant had an accident insurance policy upon the elevator, and the insurance company had paid the consideration for the release, the defendant would not be entitled to the benefit of the release.

This assignment is well taken. The evidence in relation to an accident policy held by The Oriental upon the elevator was immaterial and tended to confuse the jury. The fact that such policy was held in no way affected the rights of the parties in this inquiry, and as original evidence it was not proper to go to the jury. In this view, the remarks of counsel and the court were improper.

10. On cross-examination of the defendant's witness, Peter Stretch, plaintiff's counsel asked him if there were not first-class elevators which do not have the safety attachments on top of the elevator car. Defendant's counsel objected, upon the ground that the law does not require that the defendant should have used the best make of elevator. The court overruled the objection and permitted the witness to answer the question, which he answered in the affirmative. The witness had testified fully as to this particular elevator, and as an expert upon the construction of elevators generally, and that this particular make of elevator was among the best. The question was entirely legitimate.

11. Several witnesses were introduced by the plaintiff to impeach the testimony of defendants' witness Charles Vignes. A motion was made to strike out their testimony, upon the ground that it was shown upon cross-examination that they were not acquainted with the reputation of the witness for truth and veracity. The witnesses qualified on direct examination to testify on the subject, and while the cross-examination tended to show that their information had not been derived from hearing the character of the witness spoken of generally, it can not be correctly said that it was shown that they were not acquainted with his reputation. The court properly left the evidence with the jury, regarding, doubtless, the facts elicited by cross-examination as only affecting the weight of the evidence.

12. Plaintiff's counsel asked her witness, Mr. Barclay, what was the condition of the weather at the time the release was signed. Defendants' counsel objected that the evidence was immaterial, but the witness was permitted to answer that it was sleeting and raining. The court remarked that the evidence, by two or three witnesses, was uncontradicted that it was raining and sleeting at the time, that the fact had been testified to. The remarks of the court were excepted to by counsel for The Oriental, as being a comment upon the evidence and tending to improperly influence the jury. The above statement covers all the facts certified in the bill. We are not informed by it as to what was the state of the evidence upon the particular fact inquired about. If, as the court stated, the fact was established, and uncontradicted, we see no injury

which could occur to defendant through the remark of the court. The statement of facts covers 386 printed pages, and we do not feel called upon to go through the mass of evidence to ascertain as to the correctness of the court's statement. It is always best for the trial judge to refrain from such remarks during the trial and in the hearing of the jury. The evidence of the witness was material, in view of plaintiff's contention that she signed the release to keep from being ejected from the house and to save her life, which it is claimed would have been imperiled by being forced out at that time.

13. Objection is made to the argument of plaintiff's counsel in making strictures upon the defendants' witness Vignes. The bill of exceptions is approved with such explanation as to leave it uncertified that the recitals in the bill are true. For this reason we will not consider the assignment based upon the bill.

14. The argument of plaintiff's counsel is further complained of in these particulars: In commenting upon the evidence of the witnesses, and explaining the absence of certain witnesses, he stated that he had them subpœnaed and could not get them there, and that "if we had a capital stock of $250,000, like the defendant, we could have paid Dr. Rosser and Dr. Lengel both for their time, and in all probability have had both of them here as witnesses." Also this statement: "If you ratify this monstrous lease, what does it mean to this poor plaintiff? It means the poorhouse; it means a life of poverty, misery, and distress; she has no means to support herself."

That these statements of counsel were improper there can be no question. The only question is, whether they probably influenced the jury to the prejudice of defendants. Railway v. Jones, 73 Texas, 234, 235; Willis v. McNeill, 75 Texas, 465; Railway v. Jarrell, 60 Texas, 268. The issues as to the negligence on the part of the defendants, the circumstances under which the release was executed relied upon to avoid the release, and the extent of plaintiff's injuries and resulting damages, were all closely contested in the evidence upon the trial. The argument may have aroused the sympathy of the jury toward the plaintiff and enlisted their selfish interest in her behalf. Under authority of the Jones case, 73 Texas, 234, above cited, we feel that we must treat the argument as damaging in its tendencies and results.

15. Counsel for The Oriental asked a special charge to the effect, that if The Oriental was operating the hotel as the agent of the Oriental Investment Company, and not for profit to itself to be derived from the business, it would not be liable except for willful wrong acts or gross negligence; that there was no evidence of such character of acts on its part, and if the jury believed it was acting as such agent, they should find in its favor and against the plaintiff.

The pleadings of The Oriental are entirely inconsistent with the charge asked. It admits that it was operating the hotel under a lease from the owner, the Oriental Investment Company, and the evidence shows without controversy that it held itself out to the world as the responsible party

in the business of running the hotel. It could not shield itself behind an undisclosed agency in a suit based upon its negligence, prosecuted by one whom it had employed, while holding itself out as the responsible party.

16. It is insisted that the court in its charge to the jury placed the burden upon the defendants to show that they did not know, and could not by the use of ordinary care have known, of the incompetency of the operator of the elevator. . In this connection the action of the court in refusing two special charges requested is complained of. The portion of the general charge here complained of is as follows: "The facts, without dispute, further show that the chambermaids in the hotel were under the control and direction of the housekeeper; that said housekeeper hired and discharged them at will, and that Charlie Vignes, who was running and operating the elevator, was under the control, management, and direction of some officer or agent of the hotel—this being so, you are told that under the law the plaintiff Maggie Barclay was a fellow-servant with Charlie Vignes, the party operating the elevator at the time of the accident. Therefore, if you find and believe from the evidence that Charlie Vignes was a competent elevator operator, and that the elevator fell by reason of his negligence; or if you find and believe from the evidence that the elevator fell by reason of the negligence of Charlie Vignes, and further believe that Charlie Vignes was an incompetent elevator operator, and further believe that the defendants did not know of his incompetency, if you find he was incompetent, and that the defendants could not by the use of ordinary care and diligence have known prior to the falling of the elevator that he was incompetent, then you will find a verdict for the defendants. On the other hand, if you find and believe from the evidence that the elevator fell on the occasion in question by reason of the negligence of Charlie Vignes, and you further find that Charlie Vignes was an incompetent elevator operator, and that the elevator fell by reason of his incompetency, and that the defendants knew prior to the date of the accident that he was an incompetent elevator operator, then you will not find against the plaintiff on the ground that the elevator fell by reason of the negligence and incompetency of the said Charlie Vignes, if you find that it did fall by reason of his negligence and incompetency."

This charge puts the issue of the incompetency of the servant, and the master's knowledge of such fact, in both negative and affirmative forms of expression, and does not place the burden of proof on either party. In another portion of the charge the burden of proof generally was placed upon the plaintiff. The special charges were not directed at the question of burden of proof, and in so far as they embodied other correct propositions they were sufficiently covered by the general charge.

17. The defendant The Oriental requested the court to charge the jury, in effect, that the pleadings of the plaintiff did not put in issue the alleged fact .that the release was executed for its benefit, and that they would therefore consider it as having the same effect as it would have if

The Oriental had been named in the instrument as the releasee. The requested instruction was refused, and this is assigned as error. The general charge of the court treated the release as executed for the benefit of The Oriental, and instructed the jury, in effect, that unless it was executed under circumstances of undue influence, fraud, threats, and duress, as alleged by plaintiff, they should find for the defendants. Such being the character of the general charge, there was no error in refusing the special charge.

In connection with the above assignment, it is complained that counsel for plaintiff, in addressing the jury, said: "This so-called release is no defense for The Oriental; it shows on its face that it was never intended for The Oriental; it was given to the Oriental Hotel Company, a concern that is not a party to this suit, a defunct corporation."

There was no ground for controversy, under the evidence, as to the fact that the release was intended to be executed to The Oriental, instead of the Oriental Hotel Company, and in view of this condition of the evidence the remarks of counsel were improper.

18. The charge of the court upon the issue of the release is complained of, which charge is as follows: "The release before you shows upon its face that the plaintiff Maggie Barclay made and entered into a written release, wherein she, in consideration of the sum of $100, released the defendants from all damages to her growing out of or arising from this elevator accident. This release appears upon its face to have been duly acknowledged by her before a notary public on January 31, 1894. The defendants plead this release in bar of plaintiff's right to a recovery. The plaintiff alleges and avers that this release was procured from her by threats and duress; that the persons who procured her to sign the same coerced her into doing the same, and threatened, in the event she did not sign the same, to eject her from the hotel, while she claims she was not able to leave the hotel, and under these circumstances, and to prevent being ejected, she signed the same. You are told, gentlemen, that this release appearing regular upon its face, it is presumed to speak and recite the truth, and the duty is cast upon the plaintiff to show clearly by the evidence that it was executed in the manner and under the circumstances alleged by her in her pleadings, and if you find and believe from the evidence that this release was executed by the plaintiff under the circumstances and in the manner alleged and detailed by her, then, if you so find, the same would not be binding upon her, provided she promptly repudiated and disaffirmed the release after she got free from the environments, if any, by which she alleges she was surrounded at the time of its execution. Upon the other hand, if you find and believe that the plaintiff signed or acknowledged the release freely and voluntarily, without duress, and that no threats or coercion were used to induce her to execute the same; or, if you find and believe from the evidence that she did not promptly disaffirm and repudiate the same after she got free of the environments, if any, by which she alleges she was surrounded at the time of its execution, then, in either event, the release would be binding."

In considering the question of the correctness of this charge, we will dispose of the several questions raised in relation to the release without reference to the different assignments presenting them, and without regard to the manner in which they are raised.

(1) It is contended that the court should have instructed the jury, in effect, that the execution of the release not being denied under oath, and no tender of the consideration therefor having been made by plaintiff, plaintiff's original cause of action for injuries was merged into the release and she could not recover. In other words, the proposition is, that the execution of the release being admitted, no recovery can be had on account of the injuries without a rescission of the contract of settlement evidenced by the release.

Plaintiff sued upon her original cause of action for damages resulting from injuries received through negligence of the defendants. The defendants pleaded the release in bar of her right to a recovery. In an amended pleading, plaintiff denied under oath that she had received any consideration for the release, and also alleged that her signature thereto had been procured by defendants through undue influence, fraud, threats, and duress. The release recited a consideration paid of $100 in money "and divers other good and valuable considerations." The evidence thoroughly established the fact, that while the $100 was tendered to the plaintiff, she never appropriated it, and that it never passed from the control of The Oriental, and was at the time of the trial in its possession. She strenuously denied that any other consideration was mentioned to or considered by her in the execution of the release. She claims that she did not receive and appropriate the $100, because she did not intend to be bound by the release. That she signed the release while she was in great physical and mental pain and distress superinduced by her injuries, within four days from the time of their infliction, under the influence of persuasion and threats to eject her from the house, when in all probability it would have caused her death to have removed her from the hotel; that it was to save her life that she signed the release. On the other hand, the defendants contend that the $100 was only part of the consideration, and that her board, lodging, nursing, medical attention, and medicines constituted part of the consideration mentioned, considered, accepted, and entering into the execution of the release. The evidence shows that plaintiff remained at the hotel until March 1, about five weeks after she was injured, when she was taken to her father's house. She and other witnesses testified that when she was leaving the hotel, Mr. Alden, The Oriental manager, went to her room, offered her the $100, which she declined to receive, and that he threw it down on the bed and left the room. The money after this went back into the hands of The Oriental.

Up to the time of her injuries plaintiff had been receiving her board and lodging at the hotel and $15 per month in consideration of her labor as chambermaid. Her injuries incapacitated her from earning these things in return for labor. Under instructions from the court, the value

of the board, lodging, nursing, medical attention, etc., was deducted from the amount of damages which the jury found resulted to plaintiff from the injuries.

It will be seen from this statement that this is not a case where a release from liability has been executed upon a consideration admitted to have been paid by the beneficiary of the release and accepted by the person executing the release, and where the force and effect of the release is sought to be avoided by showing that the circumstances under which the release was executed were such as to render it voidable. In such cases courts of equity will ordinarily require the party seeking relief against such a release to restore, or offer to restore, the consideration admitted to have been received, before they will investigate the circumstances under which the release was executed. This upon the familiar principle that it would not be fair and just for him to retain money paid as a consideration for his act, and at the same time deprive the other party at interest of all its benefits, upon the ground that such act was voidable. Under such conditions he should be required to restore the status quo before a court of equity should investigate the facts with the view of determining whether he should be relieved against the act as a voidable act. Stewart v. Railway, 62 Texas, 246; Hunt v. Turner, 9 Texas, 388, 389; Goldfrank v. Young, 64 Texas, 432; Grabenheimer v. Blum, 63 Texas, 639; Houston v. Killon, 86 Texas, 308; Rankert v. Clow, 16 Texas, 12; Railway v. Brazzil, 72 Texas, 233; same case, 78 Texas, 314.

The plaintiff's case here is a suit at law for damages flowing from an alleged tort. There are no allegations in her pleadings which invoke the exercise of the equitable powers of the court. She attacks the release pleaded in bar of her right of recovery as being without consideration, fraudulent and void. The truth of these allegations a court of law has jurisdiction to determine, and when found to be true will disregard the instrument as being without legal effect. It is also true, that courts with equity powers will protect the equitable rights of the defendant arising upon his answer, regardless of the nature of the relief sought by the plaintiff, and will make all necessary orders to that end and may require a tender for that purpose. Pom. Eq. Jur., sec. 388.

In a suit for rescission, the rule is that the admitted consideration received must be tendered back, to the end that all parties may be protected. Where such tender appears not to be necessary for the protection of all parties, the reason for its requirement ceases, and it will not be enforced by the courts. State v. Snyder, 66 Texas, 698; Terrell v. De Witt, 20 Texas, 260; McCarty v. Moorer, 50 Texas, 287; Clay v. Hurt, 49 Texas, 436.

In cases where equitable rights arise out of the defenses urged by the defendants, and where the subject matter of the litigation is such that the court by its final judgment may give full protection without the requirement of a tender, no good reason is perceived for the making of such requirement.

In this case, as has already been seen, no money was received and ap-

propriated by the plaintiff; the value of the board, lodging, nursing, medical attention, etc., claimed by defendant as a part of the consideration, under the circumstances of this case, were elements of damage arising out of the injuries inflicted, and the court was able in its final judgment to protect the defendant in the expense it had incurred for the benefit of the plaintiff, and did so by having the amount of such expenditures deducted from the amount of damages found by the jury to have been sustained by the plaintiff. This practice is approved in the following cases: Railway v. Doyle, 18 Kan., 58; Railway v. Lewis, 109 Ill., 120; Mateer v. Railway, 15 S. W. Rep., 970; Railway v. Harris, 158 U. S., 330-333, and see cases there cited.

Under plaintiff's theory of the matter, she was never bound by the terms of the release, and as the court could fully protect the rights of the defendants in case it were found that their contention was true in relation to the board, etc., being part of the consideration agreed upon, we think the plaintiff was entitled to a judicial determination of her rights, without being embarrassed by a requirement of tender. The court did not err, therefore, in refusing to charge the jury in accordance with the contention of appellants as to a tender of the alleged consideration of the release, as indicated by special instructions requested. This view of the question must also settle the question of limitation raised. See also on this point, Howard v. Windom, 86 Texas, 566.

(2) It is further urged that the charge was erroneous in telling the jury, in effect, that certain facts would constitute duress which would render the release void. The proposition insisted upon is, that duress, like negligence, is a fact to be determined by the jury. We can not agree to this proposition. What constitutes duress is a question of law; the existence of the facts from which the state of duress arises is to be determined by the jury. Duress may consist in actual restraint of the liberty of the person, and it also exists when fear of bodily or other harm has been produced upon the mind, through threats or other means, to such an extent as to overcome the will and cause the person to do that which his judgment and discretion, uninfluenced by such fear, would condemn and prevent him from doing. In case acts other than actual restraint of the person's liberty are alleged to constitute duress, as in this case, the jury should be left to determine the truth of the allegations as to the existence of such acts, and also whether they had such force and influence upon the mind of the particular person as to overcome the will and liberty of discretion to such an extent as to influence the person to act in the particular matter in a way that his judgment and discretion would condemn and prompt him not to do if free from such influence. Unlike the question of negligence, the jury is not furnished with any standard or model of person, to determine how this particular person was influenced by such acts. What would influence the mind and subordinate the will of a timid and shrinking person might have little effect upon the strong and courageous. What would frighten a woman into terms of concession as to her rights might excite only indignation and

resentment in the stalwart and courageous man. It would be cruelly unjust to deny relief to the frail and weak upon the theory that persons ordinarily well constituted would not have yielded to such influences. The inquiry is: Was the mind and will of the particular person concerned subordinated by such influences?

It is proper here to notice that the presentation of the issues growing out of the release, as made by the court to the jury, was quite unfair to the plaintiff. Take the charge of the court as a whole; it authorized the jury to disregard the release as a defense only upon the ground of duress. The court also should have submitted to the jury the other two grounds alleged as rendering the release voidable, namely, want of consideration and undue influence amounting to fraud. Either of these grounds, if sustained by the proof, would be as potent and effective in this case as that of duress, the difference consisting only in this—that the release would be void if executed under duress, while it would be voidable only if executed under either of the other named conditions.

19. On the question of the liability of the Oriental Investment Company, the court charged the jury as follows: "With reference to the question as to whether or not the two corporations, viz., The Oriental and the Oriental Investment Company, are liable, you are told that the plaintiff alleges and charges that the corporation known as The Oriental is a mere instrument for and organized and created by and on behalf of the Oriental Investment Company, for the purpose and object of running and operating the Oriental hotel, at Dallas, in the interest and for the use and benefit of said Oriental Investment Company, and that said hotel was at the time of the accident being run and operated for said last-named corporation, but run in the name of The Oriental for the purpose of shielding the Oriental Investment Company from all responsibility arising from and growing out of the running and operating the hotel. Now if you find and believe from the evidence that this contention of plaintiff is true, then said Oriental Investment Company would be liable, if you find that the plaintiff should recover damages. Upon the other hand, if you find that this contention of the plaintiff is not true, then under the terms of the written lease between these two corporations, executed on October 10, 1892, the Oriental Investment Company would be absolved from all responsibility."

The Oriental Investment Company takes this position: The charge was erroneous in submitting to the jury the question whether The Oriental was the mere instrument and agent of the Oriental Investment Company in the operation of the hotel. This issue was raised by the pleadings, and there was evidence tending to establish it. If The Oriental was in fact operating the hotel as the instrument and agent of the Oriental Investment Company, and not for its own benefit under a bona fide lease, we know of no principle which would exempt the Oriental Investment Company from the liability which usually falls upon the principal for the acts of the agent. The fact that they are both corporations certainly does not furnish sufficient reason for preventing the applica-

tion of the general rule. The Oriental, by the terms of its charter, having authority to operate a hotel, and the Oriental Investment Company being the owner of the property, if the owner placed the property in the possession of The Oriental, to be run by it as the mere instrument and agent of such owner and for its benefit, then under the familiar principles of agency, the investment company would be liable for the acts of The Oriental in the operation of the hotel.

In this connection, under assignments overruling exceptions to pleading and objections to evidence, it is insisted that the legal existence of The Oriental, as a corporation, can not be attacked in this proceeding by showing irregularities in the manner of procuring its charter. This proposition has reference to the allegation that the statutory requirement that at least two of the subscribers to the articles of incorporation must be citizens of this State had not been complied with by the incorporators. The alleged irregularity did not appear upon the face of the articles of incorporation, and the effort was to attack the bona fides of citizenship. The proposition of appellants Oriental Investment Company is sound; the legal existence of a corporation can not be attacked in a collateral proceeding in this manner. This principle should be applied in reference to both pleading and evidence. No allegation or proof should be excluded, however, which is directed at and has a legitimate bearing upon the issue of the agency of The Oriental for the Investment Company in running the hotel.

20. The charge of the court is objected to as being erroneous in the matter of the burden of proof, degree of care, and assumed risk, in the following part of the charge: "You are further told, that it was the duty of the company operating and running the hotel to provide said elevator with machinery and fixtures that were reasonably safe for the purposes for which it was used by the hotel; that is, the duty and obligation was devolved upon the company or companies running the hotel and the elevator to use that degree of watchfulness and care that a person of ordinary prudence would have used under the same surrounding circumstances, (1) to see that the machinery and fixtures of the elevator were reasonably safe for the purposes for which they were used and intended by the hotel to be used, and (2) to see that they were kept in this condition of reasonable safety. The company or companies operating the hotel were not required to guard against latent defects in the elevator or its machinery, which could not have been seen or discovered by such an inspection as a reasonably cautious and prudent person would have given the machinery; therefore, if you find and believe from the evidence that the elevator fell by reason of latent defects existing in it or its attachments that could not, prior to the day of the accident, have been discovered by the use of reasonable care and diligence, that is, such care and diligence as an ordinarily prudent person would have used for the company or companies running the hotel, then you will find for the defendants. However, if you find and believe from the evidence that the elevator accident by which the plaintiff was injured was caused or occa-

sioned by reason of the fact, if you find such to be the fact, you being the judges of that, that the elevator was not properly constructed, or was not furnished with machinery and fixtures that were reasonably safe, or if you find that there were defects in its construction or in its machinery and fixtures which might have been discovered prior to the accident by an inspection of a competent person, then, if you so find, the plaintiff would be entitled to a verdict against the party running the hotel; provided, you further find that she got upon the elevator with the approval and consent and at the instance and under the directions of the housekeeper, and that the release upon which you are hereinafter instructed is not binding upon her. If she, at the time of the accident, voluntarily used the elevator at her own option, and without the consent, approval, and direction of the housekeeper or manager of the hotel, then she assumed the risks incident to its operation, and in this event she can not recover. If you find and believe that the elevator was constructed in a reasonably proper way, and furnished with fixtures and machinery that were reasonably proper and reasonably safe; or, if you find that the accident was unavoidable and was occasioned by latent defects in the elevator or machinery or fixtures, which could not by the use of ordinary care and diligence have been discovered prior to the accident by an inspection of the same by a prudent person, then and in either of these events, no recovery can be had by the plaintiff."

(1) It is contended that the court in the charge placed the burden of proof upon the defendants to show that the injury occurred through latent defects which could not have been discovered by the exercise of proper care. The charge of the court in another portion thereof placed the burden of proof upon the plaintiff generally to establish her right to a recovery by a fair preponderance of the evidence. There is nothing in this portion of the charge complained of which attempts to place the burden of proof, and so far as that question is concerned, we think the objection without merit.

(2) The second contention is, that the charge required a higher degree of care of defendants than that warranted by the law in the matter of the discovery of defects. On the issue of latent defects the court charged that the defendants "were not required to guard against latent defects * * * which could not have been seen or discovered by such inspection as a reasonably cautious and prudent person would have given the machinery." In applying this principle, the jury were instructed: "If you find and believe from the evidence that the elevator fell by reason of latent defects existing in it or its attachments that could not prior to the day of the accident have been discovered by the use of reasonable care and diligence, that is, such care and diligence as an ordinarily prudent person would have used for the company or companies running the hotel, then you will find for the defendants." We think the charge free from this objection.

The part of the above charge wherein the following language is used is not accurate and correct, to wit: "However, if you find and believe

from the evidence, that the elevator accident by which plaintiff was injured was caused or occasioned by reason of the fact, if you find such to be the fact, you being the judges of that, that the elevator was not properly constructed, or was not furnished with machinery and fixtures that were reasonably safe, or if you find there were defects in the construction or in its machinery and fixtures which might have been discovered prior to the accident by an inspection of a competent person, then, if you so find, the plaintiff would be entitled to a verdict against the party running the hotel," etc.

This charge made the party running the hotel liable, if the accident was caused by defects in the construction or machinery and fixtures, independent of the question of ordinary care. In other words, the jury were instructed, in effect, that such defects would constitute actionable negligence authorizing a recovery. The test of liability was, did defendants exercise that prudence and care in furnishing and maintaining the elevator which persons of ordinary care and prudence would have exercised under like circumstances? The court evidently intended to convey this test, but the structure of the charge made this particular portion of it convey a different meaning.

(3) The charge is also assailed upon the ground that it relieves the plaintiff of being in the attitude of a volunteer in riding upon the elevator in the event she had the consent, approval, and direction of the housekeeper or manager of the hotel. The housekeeper employed and discharged servants working in the capacity of plaintiff, and she stood in the place of the principal, as to this plaintiff. Her orders were to be observed by plaintiff, had all the force and effect of orders of the master, and the master must be held responsible for them. If, in the discharge of her duties as chambermaid, the housekeeper or manager had consented, approved, or directed the use of the elevator in passing from one story of the house to another with her burdens of linen, she would not be a volunteer in law, assuming the risks incident to that method of transit from one part of the house to another. It was not necessary that she should be compelled to ride in the elevator; it would be sufficient if that method was provided and approved for use in the discharge of her duties, to relieve her of the attitude of a mere volunteer. If the plaintiff knew that she was prohibited by the manager of the hotel from riding in the elevator while in the discharge of her duties, and that the housekeeper had no authority to direct her to use the elevator, she would not be protected by the directions of the housekeeper. But if she in good faith believed that the housekeeper had authority in the matter, she would be justified in acting upon the direction of the housekeeper. This discussion also disposes of the special charges asked along this line.

21. The charge of the court is also objected to in relation to the issue of ratification of the release. The court, after stating what facts would avoid the release and render it not binding upon plaintiff, added this clause, "provided she promptly repudiated and disaffirmed the release after she got free from the environments, if any, by which she alleges she

was surrounded at the time of its execution." Then follows this paragraph: "Upon the other hand, if you find and believe that the plaintiff signed or acknowledged the release freely and voluntarily, without duress, and that no threats or coercion were used to induce her to execute the same; or if you find and believe from the evidence that she did not promptly disaffirm and repudiate the same after she got free from the environments, if any, by which she alleges she was surrounded at the time of its execution, then in either event the release would be binding." It is insisted that the use of the term "environments" in the charge renders the proposition submitted by the charge uncertain, and that the court should have told the jury what was meant by the expression "environments."

If the release was executed under circumstances of undue influence amounting to fraud, the release was in law voidable. Voidable contracts are obligatory until repudiated or annulled, and are subject to ratification. When once ratified the right to elect not to be bound by such contracts is lost, and can not thereafter be exercised. The election must be made within a reasonable time, and a failure to make such election within a reasonable time may, and should be, regarded as a ratification. What would be a reasonable time in which to make the election varies with and must be determined by the circumstances of each case.

In this case, it is not contended that there was any express ratification; but it is asserted that the plaintiff accepted the benefits of the release, failed to restore the consideration, and also failed to expressly repudiate the release until the institution of this suit, and that these facts amounted to a ratification.

As has heretofore been seen, the plaintiff did not appropriate the money tendered as consideration, and she denied that there was any other consideration. If there was other consideration, it was in the way of board, lodging, nursing, medical attention, etc., bestowed upon her while she was in the hotel confined to her bed. She left the hotel about March 1st, after she was injured in January, and she testified that on that day she rejected the $100 when tendered her by the manager of the hotel, and on the 9th day of March she filed her suit. Under these circumstances, the court should not have instructed the jury that it was her duty to promptly disaffirm the release after she was free from the conditions which induced its execution. The jury should have been instructed, that if the release was executed under such conditions as would render it voidable, plaintiff had the right to elect not to be bound by it. That in order to avail herself of the right to treat the release as not binding upon her, it was her duty to repudiate it within a reasonable time after she was free from the influences which induced its execution, and unless she made the election in such reasonable time, she should be held to have ratified her former action and would be bound by it. As to what would be a reasonable time should be left to the jury, to be determined in the light of the circumstances surrounding the parties and the particular transaction. Railway v. Brazzill, 72 Texas, 238-242.

The charge in this case upon this point closely followed the special instructions discussed and approved in the Brazzill case, just cited. The facts of that case were entirely different, and the charge there justified was not proper in this case. There $500 had been paid to Brazzill while he was alleged to be insane, and it was contended that after his sanity returned to him, with full knowledge of the contract of settlement, and knowing that he had received the money in consideration of the release, he retained the money and spent it in paying his debts and otherwise. If he had the consideration, in the form of money, in his possession, and his reason was restored and he was fully informed of the facts, it was certainly his duty to promptly disaffirm the release, and the use of the money under such conditions might properly be regarded as a ratification.

We do not think it necessary to discuss any of the other assignments of error presented. We have endeavored to dispose of every question which appeared to be material and which could arise upon another trial. The transcript in the case covers more than 800 printed pages, and the number of errors assigned is in fair proportion to the size of the transcript. The counsel could have saved the court a great deal of unnecessary labor by presenting only the material points relied upon for a reversal of the judgment.

Appellee's cross-assignment of error is not well taken.

On account of the errors pointed out, the judgment is reversed and the cause remanded.

*Reversed and remanded.*