29736. ROBERTS, guardian, *v.* CARMICHAEL, administrator.

DECIDED NOVEMBER 21, 1942. REHEARING DENIED DECEMBER 16, 1942.

596

602

*Luther Roberts,* for plaintiff.

*Blair & Carmichael, George D. Anderson, H. C. Schroeder,* for defendant.

FELTON, J. (After stating the foregoing facts.)

1, 2. The first and second headnotes require no elaboration.

3 (*a*). The judgment of the court with respect to the funds coming into the hands of the administrator from his predecessor and from the sale of the real estate of the estate of the deceased was correct. The caveator had no standing in court unless title to the above property passed to her children under the judgment for a year's support. This judgment clearly shows that only money in the hands of the administrator at the time of the setting apart of the year's support was contemplated from the plain and unambiguous terms of the return, which was not appealed. Whether the return as to the money is reasonable is beyond the question. It is a reasonable deduction to say that the appraisers did not know whether there was any money remaining at the time of their return or not. If they had known that there was none it does not seem that they would have set any apart. Nor do we think it was incumbent on the appraisers to determine whether the payments which had been made by the administrator were legal payments, nor to attribute to them as laymen the wisdom of intending to set aside money illegally paid out by the administrator. If they had so intended it would have been so easy to make it clearly known. Likewise, if it had been intended that any other money coming in later should be set apart, such intention could easily have been stated. No appeal was taken from the judgment approving the return of the appraisers, and it must be enforced as written. All of the money above mentioned had been paid out before the judg-

ment setting apart the year's support, and consequently the title did not pass under the judgment setting it apart.

(b) The judgment was correct as respects the proceeds of the sale of the real estate, because if the administrator had not made the agreement he did with the holders of the security deeds there would have been no proceeds from the real estate. In the circumstances the holders of the security deeds had the right to have the agreement enforced as made or they would not have been bound to carry out their part of the agreement. The arrangement amounted to their accepting the money from the sales in full settlement and their paying the bills complained of themselves. Neither the estate of the deceased, nor one claiming under it, could object to the manner in which this matter was handled, because it resulted favorably to the estate in the discharge of more of its obligations than would have resulted without it, and because if the agreement had not been made and carried out the estate would have been in a worse financial condition.

(c) The judgment with reference to the proceeds of the money from the Junior Order of United American Mechanics was correct. It was contended that it belonged to the children and not to the estate. One claiming adversely to the estate must file his claim in a court other than the court of ordinary. *Fulford* v. *Sweat,* 65 *Ga. App.* 521 (16 S. E. 2d, 102); *Lyons* v. *Armstrong,* 142 *Ga.* 257 (82 S. E. 651). The question of the liability of the administrator has not been adjudicated in the judgment under review here.

The court did not err in rendering the judgment complained of.

*Judgment affirmed. Sutton, J., concurs.*

STEPHENS, P. J., dissenting. The administrator in his return admitted that, before the taking out of the year's support, he had collected and had in his hands as administrator money belonging to the estate in the amount of $1906.34. According to this return $28.09 was received from the temporary administrator who had been dismissed, and the balance, consisting of four items, represented the purchase-price of various lots of the deceased which had been received from four named individuals. It was admitted in the agreed statement of facts that, with the exception of the $28.09, all of these funds were derived "from the sale of property belonging to said estate against which properties there were se-

curity deeds in amounts greater than said properties sold for;" that various disbursements appearing in the return as having been made before June 7, 1940 (the date upon which the year's support was set aside), "were made by and with the consent and approval of the holders of said security deeds, and were made possible by the holders of said security deeds reducing the amount of their liens so as to permit the payment of" certain designated sums, $28 advertising fee, $128.25 as a commission to Johnson Land Company for sale of land, $41.05 as court costs to the ordinary, and $57 as part payment on commission to the administrator; that "had not the holders of said security deeds reduced their liens in amounts sufficient to permit payment of the amounts just set out, it would have required all the proceeds in the hands of the administrator to apply on said security deeds, and even then there would have been insufficient money to fully satisfy said liens."

The year's support which was set apart on June 7, 1940, and approved by the ordinary on July 1, 1940, consisted of "all money now remaining in hands of the administrator for the said minor children's support and maintenance," and "all the household furniture of" the deceased. It appears that on June 7, 1940, when the year's support was set apart, which consisted of "all money now remaining in the hands of the administrator," there was no money actually in the hands of the administrator, but that all of the funds which the administrator had collected and that had come into his hands as administrator before June 7, 1940, had been paid out by him. All of such sums which had been paid out by him, with the exception of the amounts indicated above, consisting of advertising fee, commission for sale of land, court costs of ordinary, and part payment of the administrator's commission, and possibly a small fee of $1.50 for a "revenue certificate on deed," and $120.25 to the sheriff for State and county taxes on property of the estate of the deceased for the years 1937, 1938, and 1939 (the deceased having died in March 1939), were paid to various individuals in satisfaction of loan deeds against property of the deceased.

It was contended by the administrator and was so held by the judge in passing on the law and the facts under an agreed statement of facts, that the year's support could not attach to the funds which had come into the hands of the administrator from the sale

of the real estate upon which certain individuals held security deeds, which funds had come into the administrator's hands by consent of the holders of such deeds. The idea seems to be that title to the property having passed into the holders of such deeds the year's support could not attach to any money derived from the sale of the property.

It is stated, however, that the holders of the security deeds "reduced" the amount of their "liens" and consented for the administrator to use a portion of the funds derived from the sale of the real estate in the payment of certain debts as narrated above which were not secured by real estate.

The year's support would rank ahead of all the claims against the decedent or the estate which were paid out by the administrator, with the possible exception of the money derived from the sale of real estate upon which the decedent had placed security deeds. It is insisted that since all of the funds which had come into the hands of the administrator before the setting aside of the year's support had been expended, the year's support, which consisted of all money at the time in the hands of the administrator, had nothing to which it could attach. An administrator is presumed to have knowledge of the condition of the estate, and of the fact that the wife or minor children may, for a stipulated period, obtain a year's support which will supersede a great many of the debts of the decedent. In *McLean* v. *McLean,* 51 *Ga. App.* 751, 753 (181 S. E. 707), it was stated as follows: "It was no defense to the year's support proceeding that claims against the estate inferior in rank to a year's support had been paid. The evidence shows that these claims were paid within two or three months after decedent's death. There was no obligation on the executors to pay them until the close of the administration year. Code of 1933, § 113-1507 (Code of 1910, § 3999). If they were paid earlier, it was at the risk of the executors in so far as any other claims of superior rank which might be later presented were concerned." *Anders* v. *First National Bank,* 165 *Ga.* 682 (142 S. E. 98); *Swain* v. *Stewart,* 98 *Ga.* 366 (25 S. E. 831); *Miller* v. *Miller,* 105 *Ga.* 305 (31 S. E. 186); *Brown* v. *Joiner,* 77 *Ga.* 232 (3 S. E. 157). The application for year's support was filed within twelve months of the appointment of the administrator, the application and the setting aside of the year's support being on June

17, 1940, and the appointment of the administrator being on June 29, 1939. The administrator was not called on to pay out any money of the estate before the expiration of twelve months after his appointment and qualification, and if he paid out such he did so at his own risk and subject to the filing of a year's support within a period of twelve months against all funds within his hands that would be subject to a year's support. The appraisers, in setting aside as a year's support "all money now remaining in the hands of the administrator," necessarily intended to set aside something of substantial value. Therefore the return of the appraisers setting aside such money as a year's support should be construed as setting aside all the money which the administrator had collected, which, according to the return of the administrator, amounted to over $1900. Of course, if any portion of this money was not subject to a year's support, as being money derived from the sale of real estate to which creditors of the decedent held title, the return of the appraisers as respects such money would be abortive and noneffective.

It does not appear that the money which the administrator accounted for as administrator and which was derived from the sale of the real estate was money belonging to the creditors of the decedent who held deeds to the real estate to secure debt. It appears that these secured creditors "reduced their liens" by the amount of the money from the sale of the real estate which had come into the hands of the administrator. This must necessarily mean that these creditors, either donated these funds to the estate, or possibly loaned them to the administrator personally. In any event the administrator treated these funds as funds of the estate, and he accounts therefor to the ordinary in his final return which is the subject-matter of this litigation. The administrator having accounted for these funds as the property of the estate is estopped from asserting that they are not funds of the estate. Therefore the lien of the year's support attaches to the funds, received by the administrator before the setting apart of the year's support, which belonged to the estate and which were not derived from the sale of any real estate the title to which may have been conveyed to any one else as security for debt. The lien of the year's support also attaches to the other funds which were derived from the sale of the real estate which may have been deeded to secure debt, and which

these creditors had, by "reducing" their "liens," allowed the administrator to take charge of and turn them into the estate as assets of the estate, and on which the administrator administered as part of the estate and paid out to other creditors. The court therefore erred in not allowing a year's support out of the money collected by the administrator before the setting aside of the year's support.

As respects the sum which the administrator received from the Junior Order, after the year's support had been set apart, and which he accepted as part of the estate and on which he administered as part of the estate and paid out on debts of the estate, it was not subject to the year's support. After applying to the year's support the money subject thereto, this fund derived from the Junior Order is insufficient to pay all the debts of the estate. This fund, if it were a part of the estate and was delivered to the administrator as such, was properly treated, and administered by him, as part of the estate. If it belonged to the minor children in their own right as coming from the Junior Order, they can not claim it as against the administrator in their caveat to his final returns.

The judgment sustaining the return of the appraisers and finding against the caveat was error, and should be reversed.