[L. A. No. 28322.   In Bank.   July 7, 1965.]

SHIRLEY ISRIN, Petitioner, v. THE SUPERIOR COURT
OF LOS ANGELES COUNTY, Respondent; COUNTY
OF LOS ANGELES, Real Party in Interest.

Lillian Finan for Petitioner.

Irmas & Rutter and William A. Rutter as Amici Curiae on behalf of Petitioner.

Harold W. Kennedy, County Counsel, and Donald K. Byrne, Deputy County Counsel, for Respondent and Real Party in Interest.

MOSK, J.—This matter is before us on a petition for writ of mandamus to compel the respondent court to make an order allowing petitioner to prosecute a pending civil action without prepayment of jury fees. ▮ The choice of rem-

edy is proper. (*Martin* v. *Superior Court* (1917) 176 Cal. 289 [168 P. 135, L.R.A. 1918B 313].)

The issue presented is whether an indigent plaintiff should be denied the right to proceed in forma pauperis on the sole ground that his or her attorney, who is presumably solvent, is acting under a contingent fee contract. The question is one of first impression in this court, but the District Court of Appeal has held in *Gomez* v. *Superior Court* (1933) 134 Cal. App. 19 [24 P.2d 856], that the attorney's contingent interest in the litigation is sufficient to bar his client from suing in forma pauperis. As will appear, we have concluded that the *Gomez* rule is supported neither by sound reasoning nor by authority, and hence should be disapproved and a contrary rule declared.

The County of Los Angeles, as real party in interest, entered a general demurrer to the petition for mandate; for our purposes, therefore, the facts alleged by petitioner are deemed to be true. (*Kleiner* v. *Garrison* (1947) 82 Cal. App.2d 442, 445 [187 P.2d 57].) Those facts may be summarized as follows: petitioner filed the present action for personal injuries and property damage arising out of an automobile accident allegedly caused by the negligence of defendant Sylvia Bixby. At pretrial conference petitioner demanded a jury trial, and thereafter noticed a motion for waiver of prepayment of jury fees on the ground of indigency. In support of the motion petitioner filed a declaration averring that she "is unable to pay jury fees or any other legal fees. There is no way that declarant can raise the funds with which to prosecute her action, as she is having difficulty raising funds for food and other necessaries. Declarant has been incapacitated for work of any kind since October 25, 1962, the date upon which she received the injuries sued upon in the instant case." Petitioner's attorney also filed a declaration stating that in her opinion "the plaintiff's [petitioner's] best interests will be served by having a jury trial in the above-entitled matter"; that she has a contingent fee contract with petitioner entitling her to one-third of any amount recovered in the action and providing that petitioner "shall advance all costs of suit"; and that she (the attorney) "is unwilling to loan to plaintiff [petitioner] the $500.00 to $750.00 it may take for jury fees to prosecute this case."

Prior to the hearing petitioner agreed to give the county a

lien for jury fees against any award or settlement made in the action, and the county thereupon agreed not to oppose petitioner's motion for waiver of such fees. The court nevertheless denied the motion, apparently under the compulsion of *Gomez* v. *Superior Court* (1933) *supra*, 134 Cal.App. 19.

The facts in *Gomez* were similar to the case now before us: there, an indigent plaintiff applied for permission to prosecute his action without prepayment of jury and reporter's fees, and the trial court denied his application for the sole reason that his attorney was retained on a contingency basis. In denying a petition for writ of mandate, the District Court of Appeal relied on the general rule that an indigent litigant should not be allowed to proceed in forma pauperis "where the right sought to be enforced, or to be protected, is one in which some person who is presumably financially responsible is either equally or partially interested with the litigant, as by a joint, a common or a community interest in the subject matter of the existing or proposed litigation." (134 Cal.App. at p. 21.)

Properly circumscribed, there can be no quarrel with this rule of law. It serves to prevent abuses of the right to proceed in forma pauperis when suit is filed in the name of an indigent but merely representative plaintiff for the use or benefit of a nonindigent person who is in fact the real party in interest. Thus the rule has been invoked in suits or appeals by an executor or administrator on behalf of an estate (*Boggan* v. *Provident Life & Accident Ins. Co.* (5th Cir. 1935) 79 F.2d 721), by a trustee on behalf of beneficiaries (*Scott* v. *Turpin* (1866) 30 Ga. 964), and by a guardian on behalf of his ward (*Roberts* v. *Carmichael* (1942) 68 Ga.App. 595 [23 S.E.2d 272]; in general, see cases collected in Note 11 A.L.R.2d 609-617). The question to be resolved here is whether, as held in *Gomez,* the same rule should apply to bar proceeding in forma pauperis in a suit by an indigent plaintiff whose attorney is acting under a contingent fee arrangement.

The *Gomez* decision was predicated on a process of conceiving extreme hypotheses and drawing *a fortiori* conclusions therefrom, and the assertedly favorable weight of authority on this point in other jurisdictions. Upon closer examination, however, neither ground is tenable.

A sounder approach than that of *Gomez* will be found in an analysis of the precise nature of an attorney's interest in litigation conducted under a contingent fee contract. While

that interest has been considered in a variety of contexts (see, e.g., *Herron* v. *State Farm Mutual Ins. Co.* (1961) 56 Cal.2d 202, 205-206 [14 Cal.Rptr. 294, 363 P.2d 310] [attorney's interest protected against tort of intentional interference with contractual relationship]), it has most frequently been the subject of judicial scrutiny in proceedings to enforce a claimed attorney's lien, to compel substitution of attorneys, and to settle a dispute over attorney's fees by intervention in the client's action.

In this state attorney's liens are provided by legislation in certain limited instances (e.g., Code Civ. Proc., § 763; Lab. Code, § 4903; *City of Los Angeles* v. *Knapp* (1936) 7 Cal.2d 168, 173-174 [60 P.2d 127]), and may be created by express provision of the retainer contract between the attorney and his client (*Haupt* v. *Charlie's Kosher Market* (1941) 17 Cal.2d 843, 845 [112 P.2d 627]). Beyond this point, however, the law of attorney's liens in California today is much less clear. On the one hand, it has been said in a line of decisions stretching from *Ex parte Kyle* (1850) 1 Cal. 331, to *Jones* v. *Martin* (1953) 41 Cal.2d 23, 27 [256 P.2d 905], that our courts do not recognize the common-law charging lien of an attorney for his fee. (See cases collected in 6 Cal.Jur.2d, Attorneys at Law, p. 412, fn. 18.) On the other hand, the *Kyle* rule has been increasingly disregarded in practice.[1]

As contingent fee contracts are subject to the normal rules of construction of fiduciary agreements (*Tracy* v. *Ringole* (1927) 87 Cal.App. 549, 551 [262 P. 73]), a charging lien will be imposed if the parties have manifested an intention that the attorney shall look to the judgment as security for his fee even though the word "lien" has not been used (*Wagner* v. *Sariotti* (1943) 56 Cal.App.2d 693, 697 [133 P.2d 430] [client executed "assignment" to attorney of one-third interest in recovery, if any]; see generally Note 143 A.L.R. 204); and in some cases the evidence held to demonstrate such an intent has been slight indeed (compare *Bartlett* v.

---

[1]It may also be that the entire line of decisions denying the existence of a common-law attorney's lien has been erected on a historically erroneous foundation, as suggested by Professor Radin's trenchant critique of *Ex parte Kyle* in *Contingent Fees in California* (1940) 28 Cal.L.Rev. 587, 594-595. The virtually unanimous position of our sister jurisdictions is contrary to *Kyle*. (*City of Los Angeles* v. *Knapp* (1936) *supra*, 7 Cal.2d 168, 173; *Tracy* v. *Ringole* (1927) 87 Cal.App. 549, 551 [262 P. 73]; see generally 7 Am.Jur.2d, Attorneys at Law, §§ 281-282.)

*Pacific Nat. Bank* (1952) 110 Cal.App.2d 683, 689-691 [244 P.2d 91], with *Morrison* v. *Havens* (1938) 24 Cal.App.2d 504 [75 P.2d 515]). Another line of decisions, while not speaking in terms of a "lien," holds that the mere execution of a contingent fee contract transfers ipso facto to the attorney a "vested equitable interest" in his proportionate share of the proceeds. (See cases collected in 6 Cal.Jur.2d, Attorneys at Law, § 192.) As Professor Radin has remarked (28 Cal. L.Rev. at p. 597, fn. 26), "How these cases are to be reconciled to the doctrine that there is no lien for the attorney in California is not quite clear." An answer may lie in the fact that typically these were suits to establish an interest in real property, and the plaintiff had agreed by contract to convey to his attorney, as compensation for the latter's services in conducting the litigation, a certain percentage of whatever land might be recovered. Analogizing to the settled rule of equity in suits on a contract for the *sale* of land, the courts held that upon execution of the contingent fee contract the attorney, like a vendee, immediately acquired equitable title to his share of the land and that such interest would be protected, if necessary, by the imposition of a constructive trust. (See, e.g., *Hoffman* v. *Vallejo* (1873) 45 Cal. 564, 572; *Luco* v. *De Toro* (1891) 91 Cal. 405, 417-418 [18 P. 866, 27 P. 1082]; cf. *Howell* v. *Budd* (1891) 91 Cal. 342, 350-352 [27 P. 747].) While the analogy is not free from doubt, the holdings of these early land cases have been extended in more recent times to personal injury actions, with little apparent concern for niceties of definition. (*Jones* v. *Martin* (1953) *supra*, 41 Cal.2d 23, 27; *Gostin* v. *State Farm Ins. Co.* (1964) 224 Cal.App.2d 319, 324 [36 Cal.Rptr. 596].) In these circumstances it is problematical whether much vitality remains in the *Kyle* rule.

██ For our present purposes, however, we need not attempt resolution of such conflicts in the law of attorney's liens. It will be enough to observe that in whatever terms one characterizes an attorney's lien under a contingent fee contract, it is no more than a *security* interest in the *proceeds* of the litigation. ██ As explained in one of the leading cases on the subject, the attorney's lien is "an equitable right to have the fees and costs due to him for services in a suit *secured to him out of the judgment or recovery* in the particular action, the attorney to the extent of such services being regarded as an equitable assignee *of the judgment.* ██ It is based, as in the case of a lien proper, on the natural equity

that a party should not be allowed to appropriate the whole of a judgment in his favor without paying for the services of his attorney in obtaining such judgment."(Italics added.) (*Tracy* v. *Ringole* (1927) *supra,* 87 Cal.App. 549, 551.)

While there is occasional language in cases to the effect that the attorney also becomes the equitable owner of a share of the client's cause of action, we stated more accurately in *Fifield Manor* v. *Finston* (1960) 54 Cal.2d 632, 641 [7 Cal. Rptr. 377, 354 P.2d 1073, 78 A.L.R.2d 813], that contingent fee contracts "do not operate to transfer a part of the cause of action to the attorney but only give him a lien upon his client's recovery."

Further guidance on this issue is to be found in the many decisions defining the nature of the attorney's interest from the standpoint of his client's power of discharge or substitution. Civil Code section 2356 declares the fundamental rule that an agency may be revoked by the principal at any time unless the agent's power "is coupled with an interest in the subject of the agency." Applying this rule to the attorney-client relationship, it is settled that " 'in the absence of any relation of the attorney to the subject matter of the action, *other than that arising from his employment,* the client has the absolute right to change his attorney at any stage in the action and the fact that the attorney has rendered valuable services under his employment, or that the client is indebted to him therefor, or for moneys advanced in the prosecution or defense of the action, does not deprive the client of this right.' " (Italics added.) (*Meadow* v. *Superior Court* (1963) 59 Cal.2d 610, 616 [30 Cal.Rptr. 824, 381 P.2d 648], quoting from *O'Connell* v. *Superior Court* (1935) 2 Cal.2d 418, 421 [41 P.2d 334, 97 A.L.R. 918]; accord, *Salopek* v. *Schoemann* (1942) 20 Cal.2d 150, 155 [124 P.2d 21]; *Wright* v. *Security-First Nat. Bank* (1939) 13 Cal.2d 139, 141-142 [88 P.2d 125]; *Hoult* v. *Beam* (1960) 178 Cal. App.2d 736, 737-738 [3 Cal.Rptr. 191]; Code Civ. Proc., § 284.) The question as to when the attorney has the requisite "interest in the subject of the agency" was considered at length in *Todd* v. *Superior Court* (1919) 181 Cal. 406 [184 P. 684, 7 A.L.R. 938], in which we concluded (at p. 417) that "in order to constitute an irrevocable power of attorney there must coexist with the power a beneficial interest in the subject thereof *which is enforceable in the name of the attorney* in fact and will survive the constituent; or the power must be given as security for the payment of a sum of money

*other than that which arises as compensation through the exercise of the power,* or as security for the performance of some act of value.'' (Italics added.)

In *Todd* the power of attorney expressly recited that the client intended it to be construed as a power ''coupled with an interest in the subject matter thereof''; in spite of this declaration, we held the power to be revocable because it had in effect been given as security for the attorney's fee and hence created an interest *in the proceeds* rather than in the subject of the litigation. (*Id.* at p. 419 of 181 Cal.) Such proceeds, we reasoned, are produced by the successful exercise of the power; but the very exercise of the power extinguishes it, so that the power and the interest cannot coexist. (*Id.* at pp. 415-416.) After *Todd* it followed predictably that the mere execution of a contingent fee contract gave the attorney no ''interest in the subject of the agency.'' (*Scott* v. *Superior Court* (1928) 205 Cal. 525, 531-533 [271 P. 906].) Nor is such an interest created by a contingent fee contract in which the client ''assigns'' to the attorney, as his compensation, one-half ''of my interest, whatever that interest is now or may become,'' in the litigation. (*O'Connell* v. *Superior Court* (1935) *supra,* 2 Cal.2d 418, 423-424; accord, *Wright* v. *Security-First Nat. Bank* (1939) *supra,* 13 Cal.2d 139, 141.) And the attorney acquires no such interest even when the contingent fee contract expressly provides that to secure his compensation he shall have ''a lien on any judgment or any amount recovered.'' (*Cassetta* v. *Del Frate* (1931) 116 Cal.App. 255, 256-257 [2 P.2d 533]; see also *Wagner* v. *Sariotti* (1943) *supra,* 56 Cal.App.2d 693, 697-698.)

Similar conclusions have been reached in those cases in which the attorney has attempted to intervene in his client's action to resolve a dispute over fees. We recently restated the settled rule that '' 'The right of an attorney to intervene for the purpose of settling a dispute between him and his client as to attorney's fees for services rendered in the same action is limited to those actions wherein, by virtue of the contract of employment between the attorney and client, the former is given *a specific present interest in the subject matter of the action,* which interest might be jeopardized by the client's discharge of his original attorney and the employment of another to prosecute the action.' '' (Italics added.) (*Meadow* v. *Superior Court* (1963) *supra,* 59 Cal.2d 610, 615, and cases cited.) Here, too, the decisions uniformly

hold that such an interest is not created by the execution of a contingent fee contract (*Kelly* v. *Smith* (1928) 204 Cal. 496, 500-501 [268 P. 1057]), even where the client "assigns" to the attorney a proportionate share of the eventual proceeds (*Overell* v. *Overell* (1937) 18 Cal.App.2d 499, 502-503 [64 P.2d 483]) or expressly grants the attorney a "lien" to secure his fee (*Hendricks* v. *Superior Court* (1961) 197 Cal. App.2d 586, 588-589 [17 Cal.Rptr. 364]; *Fields* v. *Potts* (1956) 140 Cal.App.2d 697, 699-701 [295 P.2d 965]).

From the foregoing analyses the conclusion emerges that in litigation an attorney conducts for a client he acquires no more than a professional interest. To hold that a contingent fee contract or any "assignment" or "lien" created thereby gives the attorney the beneficial rights of a real party in interest, with the concomitant personal responsibility of financing the litigation, would be to demean his profession and distort the purpose of the various acceptable methods of securing his fee. As Judge Otis well reasoned in *Clark* v. *United States* (W.D.Mo. 1932) 57 F.2d 214, 215-216, "To my thinking the parallel sought to be drawn between a case in which an attorney has a contingent contract and a case in which a party sues in a representative capacity, as for an estate or for the beneficiaries of an estate, does not exist. In the latter case the interest of the estate or of the beneficiaries is in the very subject-matter of the controversy. It is the estate's case; it is the beneficiary's case. But the attorney has no interest in the case as such. He is interested in it professionally, but in no sense as a party to it. He has no present pecuniary interest in the subject-matter. The fact that he has a right by contract to participate in the proceeds of any judgment that may be obtained does not make him in any true sense of the word a party in interest. The plaintiff's grocer might have a contract with the plaintiff that he would be paid a bill owing him out of the proceeds of the judgment if one were obtained. The plaintiff's dentist or family doctor might have such a contract. Certainly it would not be said that they were therefore parties to the litigation or real parties in interest in any sense. It is difficult to see why they should not be required to give security for costs if they have such contracts just as much as an attorney should be required to give security for costs if he has a contract in accordance with which he is to be compensated for his services out of the proceeds of a judgment to be obtained. To say

one who retains a lawyer under a contingent contract prosecutes his case as trustee for that lawyer seems to me most inaccurate."

As noted at the outset, the *Gomez* opinion purportedly invokes the "weight of authority" in support of its holding that an indigent plaintiff may not proceed in forma pauperis if his attorney is acting under a contingent fee arrangement. Examination of the cases shows, on the contrary, that in taking this position California now stands alone. The court in *Gomez* relies for its authority on decisions from federal courts, New York and England. The two English cases, however, are not in point: one held that a married woman could not appeal in forma pauperis unless her husband also made an affidavit of poverty (*In re Roberts* (1886) 33 Ch.Div. 265), while the other held that an infant could not sue in forma pauperis without a like affidavit by his guardian or next friend (*Lindsay* v. *Tyrell* (1857) 2 De G. & J. 7 [44 Eng.Reprint 889] (*semble*)). The New York cases turned on a special statute in that jurisdiction (former N.Y. Code Civ. Proc., § 460) providing that in proceedings conducted in forma pauperis the court must appoint an attorney "who must act therein without compensation." (See, e.g., *Cahill* v. *Manhattan Ry. Co.* (1899) 38 App.Div. 314 [57 N.Y.S. 10].) And the several federal circuit and district court cases in accord with *Gomez* (collected at 11 A.L.R.2d 610, fn. 6) were overruled in *Adkins* v. *DuPont de Nemours & Co.* (1948) 335 U.S. 331, 340-344 [69 S.Ct. 85, 93 L.Ed. 43, 11 A.L.R.2d 599]. On the other hand, other decisions considering this point have held contrary to *Gomez*.[2]

The *Adkins* decision is instructive here. Proceeding under a federal statute which in this respect is similar to our common-law doctrine (28 U.S.C. § 1915, subd. (a)), plaintiff Adkins applied for permission to appeal in forma pauperis from a judgment of dismissal in her action under the Fair Labor Standards Act of 1938. Her application was denied by the district and circuit courts on the ground, *inter alia*, that

[2]See, e.g., *Quittner* v. *Motion Picture Producers & Distributors* (2d Cir. 1934) 70 F.2d 331, 332; *Clark* v. *United States* (W.D.Mo. 1932) *supra*, 57 F.2d 214, 215-216; *Richfield Oil Corp.* v. *La Prade* (1940) 56 Ariz. 100 [105 P.2d 1115, 1117-1118]; *Stevens* v. *Sheriff* (1907) 76 Kan. 124 [90 P. 799, 11 L.R.A. N.S. 1153]; *Smith* v. *Lyon Cypress Co.* (1916) 140 La. 507 [73 So. 312]; *Loftin* v. *Frost-Johnson Lumber Co.* (1913) 133 La. 644 [63 So. 252]; *The Oriental* v. *Barclay* (1897) 16 Tex.Civ.App. 193 [41 S.W. 117, 122]; *Gulf, C. & S.F. Ry. Co.* v. *Scott* (Tex. 1894) 28 S.W. 457, 458; *State* ex rel. *Malouf* v. *Merrill* (1917) 165 Wis. 138 [161 N.W. 375].

her attorneys were employed on a contingent fee basis and had not themselves filed affidavits of poverty. The United States Supreme Court reversed, holding that the statute, properly construed, imposed no such burden on an attorney representing an indigent person for a contingent fee. The high court reasoned (*id.* at pp. 342-343) that since the provision of the in forma pauperis statute authorizing court appointment of counsel "was plainly intended to assure legal representation to the poor, it is also obvious that the purpose of that Act could be frustrated in part by construing the statute as imposing a guarantee of appeal costs on all lawyers employed to represent the poor on a contingent basis. For if a person is too poor to pay the costs of a suit, sometimes very small in amount, how can it be imagined that he could possibly pay a fair fee except from the recovery he obtains?" Going one step further, the court then touched on the possible denial of right to counsel implicit in a contrary ruling, observing that "The statutory construction urged by respondent here would result in restricting the opportunities of the poor litigant in getting a lawyer who would follow his case through the appellate courts. For as was said by the Court of Appeals [*sic*] in *Clark* v. *United States*, 57 F.2d 214, 216: '. . . The same poverty that compels a litigant to avail himself of this beneficent statute makes it impossible for him to hire counsel. He can procure counsel only by agreeing that out of the proceeds of his case, if there are proceeds, counsel shall be compensated. . . . In practical effect he [a poor litigant] is denied counsel if his counsel must either himself guarantee the costs or file an affidavit that he also is penniless. The statute was intended for the benefit of those too poor to pay or give security for costs, and it was not intended that they should be compelled to employ only paupers to represent them.' " (*Id.* at pp. 343-344.)

Finally, a number of policy considerations weighing against the *Gomez* rule are advanced in the excellent brief of amici curiae. Under *Gomez* an indigent plaintiff is automatically denied his right to proceed in forma pauperis unless his attorney employs the subterfuge of a formal rescission of their contingent fee contract (*Emerson* v. *Superior Court* (1938) 29 Cal.App.2d 539, 541-542 [84 P.2d 1059]; *Willis* v. *Superior Court* (1933) 130 Cal.App. 766, 768-769 [20 P.2d 994]) or signs a pauper's affidavit himself. Most attorneys, commendably, are unwilling to use either of these

devices, and hence undertake the indigent's case knowing they will be *required* to advance all costs of suit. It is true that as a matter of convenience or courtesy an attorney frequently chooses to advance these costs for his client, and the practice is permitted under rule 3a of our Rules of Professional Conduct. But from the ethical standpoint there is a world of difference between such voluntary advancements and a situation in which the attorney, having accepted the employment, is compelled to advance the costs under pain of being found derelict in his duty to his client. Moreover, the attorney well knows that in the event of an adverse judgment his client is unlikely to reimburse him. Not all members of the profession may be able or willing to serve under such circumstances, and the indigent will therefore be limited to counsel who is less averse to subsidizing litigation.

Even more serious than this artificial limitation on choice of counsel is a concomitant restriction on the cases that will reach the court. No doubt where liability is clear and the defendant solvent, the indigent plaintiff will have no trouble finding counsel to represent him on a contingency basis and to advance all necessary costs. Conversely, where there is no realistic chance of recovery few if any practitioners will be eager to invest their valuable time in the case, quite apart from the question of reimbursement for costs advanced.[3] But what of the vast number of claims falling somewhere between these two extremes. Our courts do not sit merely to grant recoveries in cases of certain liability and deny them when merit is totally lacking; indeed, it is often in the resolution of cases that involve difficult questions of liability that developments in the law occur which are essential to the maturing needs of our society. However, an attorney willing to advance costs for an indigent with an obviously valid claim may refuse to do so when *in his opinion* liability is too unclear for him to risk even that relatively modest sum. It is true that an attorney has a necessarily broad discretion in advising a potential client whether or not to pursue his claim; but that advice should be based on the intrinsic merits of the case, rather than on the wholly irrelevant consid-

---

[3] For this reason there is no merit in the county's contention that if *Gomez* is disapproved ''a client should have no difficulty obtaining an attorney to handle the case, no matter how speculative the chances of recovery may be. No investment, other than time, would be made by the attorney.'' Obviously, to a practicing attorney time is worth as much as, if not more than, the relatively few dollars of costs.

eration of who is to pay the court costs.[4] The natural consequence of the *Gomez* rule is that the indigent with an uncertain claim may go without counsel and, being a layman, may simply fail to assert what rights he has. To the extent that *Gomez* thus has the practical effect of restricting an indigent's access to the courts because of his poverty, it contravenes the fundamental notions of equality and fairness which since the earliest days of the common law have found expression in the right to proceed in forma pauperis. (See *Martin* v. *Superior Court* (1917) *supra,* 176 Cal. 289, 293-297.)

For all the foregoing reasons *Gomez* v. *Superior Court* (1933) *supra,* 134 Cal.App. 19, is disapproved. We hold, rather, that the right to proceed in forma pauperis in appropriate cases may not be denied on the ground that counsel for the indigent litigant is representing him pursuant to a contingent fee contract.

The demurrer to the petition is overruled. Let a peremptory writ of mandate issue as prayed.

Traynor, C. J., McComb, J., Peters, J., Tobriner, J., and Burke, J., concurred.

---

[4]Similarly, it is true that in many cases if the plaintiff does not request a jury trial the defendant may choose to do so, and hence will bear the burden of prepaying the fees; but the indigent's right to a jury trial should not thus be at the mercy of his opponent's trial tactics.