In the Matter of PACIFIC FAR EAST LINE, INC., a Delaware Corporation, Debtor.

OFFICIAL CREDITOR COMMITTEE, Appellant,

v.

Joseph M. ALIOTO, Appellee.

SSI CONTAINER CORPORATION, a California Corporation, SSI Container Corporation International B.V., a Netherlands Corporation, Appellant,

v.

Joseph M. ALIOTO, Appellee.

Nos. C–78–1401–WAI, C–78–1402–WAI.

United States District Court, N. D. California.

Oct. 16, 1978.

Joseph M. Alioto, pro se.

Vernon D. Stokes, The Bd. of Trade of San Francisco, San Francisco, Cal., Bernard Shapiro, Frank C. Christl, Robert Jay Moore, Gendel, Raskoff, Shapiro & Quittner, Los Angeles, Cal., for appellants.

MEMORANDUM OF DECISION

INGRAM, District Judge.

This is an appeal taken pursuant to Bankruptcy Rule 801 from an award of attorney's fees to special counsel as a Chapter XI administrative expense, directing forthwith payment thereof in advance of the payment of other costs of administration. Appellee special counsel sought and was granted in the bankruptcy court an award of fees as the result of the settlement of a case in which the debtor was plaintiff, and in which special counsel had represented the debtor both before and after the commencement of bankruptcy proceedings. The settlement was approved by the same referee whose award of fees is here in issue, and is the subject of other appeals which remain at this time unresolved.

The debtor is Pacific Far East Line, a common carrier by sea which will be hereinafter called P.F.E.L. In 1974, represented by counsel other than appellee, P.F.E.L. commenced an action in this court against the Northrop Corporation alleging breach of warranty in connection with a contract between P.F.E.L. and Northrop Corporation whereby the latter was to manufacture and sell to P.F.E.L. certain barges. Appellee was substituted in as counsel for P.F.E.L. in December, 1974, and undertook the representation in accordance with the terms of a contingent fee contract which provided for the payment of a fee to appellee in a sum equal to fifteen percentum of any net recovery realized by P.F.E.L. Shortly after appellee's entry into the case, the complaint was amended to include a claim for commercial bribery under the Robinson Patman Act (15 U.S.C. § 13(c)). After appropriate motion Northrop Corporation was granted summary judgment on that claim. An interlocutory appeal was taken from that order and remained pending at the time that the case was settled.

On January 31, 1978, P.F.E.L. filed its petition for arrangement proceedings under Chapter XI of the Bankruptcy Act and continued to operate its business as a common carrier by sea as a debtor in possession. On April 10, 1978, the bankruptcy court appointed appellee as special counsel for the debtor in possession for the purpose of continuing the Northrop action. The order of appointment specified that the appellee's fee would be paid on a general retainer basis subject to the approval of the bankruptcy court. The settlement in question was then negotiated.

By the terms of the settlement, P.F.E.L. received a total sum of $17,500,000. Of this sum, $10,000,000 was in settlement of the claims asserted in the Northrop litigation, and $7,500,000 was payable to P.F.E.L. as a loan from Northrop Corporation. By the terms of the settlement, Northrop Corporation actually paid $7,500,000 of the settlement fund directly to the trustee holding title to the barges which were the subject

matter of the litigation. That fund was distributed by the trustee to retire outstanding bonds on the barges which had been insured by the Federal Maritime Administration (MARAD), to satisfy a prepayment call premium claimed in connection with the bonds, to satisfy the equitable ownership of a leasing bank in the barges, and to reserve $340,000 for legal fees to be paid to appellee by the bank receiving payment for its equitable interest in the barges. Northrop also abandoned certain counterclaims which it had previously asserted. Furthermore, in consideration for the redeemed bond, MARAD released a $1,900,000 P.F.E.L. bond previously placed upon two P.F.E.L. passenger liners, and released liens on the same two ships amounting to $3,000,000.

Following the compromise proceedings before the bankruptcy court, the compromise was approved and appellee's fee was set at $1,500,000 and authorized for immediate payment. $1,160,000 was immediately paid to appellee and the remaining $340,000 is now held in the registry of this court pending outcome of this appeal.

Confirmation of a Chapter XI arrangement plan failed to succeed, and on August 4, 1978, P.F.E.L. was adjudicated a conventional bankrupt.

■ The issues presented for decision are whether the attorney's fee awarded to appellee for his pre-bankruptcy services constitute an unfair priority over other expenses of administration of the bankrupt estate, and whether the fee awarded was excessive.

■ I find that the fee does not constitute an unfair priority of expenses of administration and is not excessive.

■ The findings of the bankruptcy referee will not be rejected unless they are clearly erroneous. Bankruptcy Rule 801. Where the conclusions of law made by the referee are challenged, the court must make an independent determination of the applicable law, *In re Piro,* 331 F.Supp. 171, 172 (S.D.Cal.1971), and has broad discretion in reviewing the evidence to evaluate the rea-

sonableness of the compensation awarded. *York International Building, Inc. v. Chaney,* 527 F.2d 1061 (9th Cir. 1975).

■ Appellants contend that the fee allowed by the referee cannot be properly characterized as an administrative expense, and if so classified should not be entitled to preferential payment inasmuch as no subpriorities are allowable within the general category of administrative expense. *In re Columbia Ribbon Co.,* 117 F.2d 999, 1001 (3rd Cir. 1941). Appellants point out that most of the work being compensated was performed by appellee prior to the initiation of the Chapter XI proceedings, and only the negotiations leading to the settlement were conducted by appellee in his capacity as special counsel for the debtor. They advert to the general rule that services performed for the benefit of the debtor prior to the institution of Chapter XI proceedings are not normally compensable as administrative expenses. The referee found that the fee was properly classified as an administrative expense and was subject to immediate payment because of the unique situation of special counsel conducting ongoing complex litigation for the benefit of the estate as compared with the general services normally rendered by bankruptcy attorneys to debtors. He was influenced to some extent by policy factors favoring the encouragement of special counsel whose aptitudes lie outside the bankruptcy field. The determination of the referee is correct.

In the case of *In re Barceloux,* 74 F.2d 288, 294 (9th Cir. 1934), the court allowed a fee based upon the reasonable value of services rendered in a sum equal to 20 percent of the fund created by the attorneys where there was no fee contract at all. The court noted:

". . . in bankruptcy very often futile quests for assets have to be made. Many times, however much ingenuity and time attorneys may expend, they may not be able to get anything for the estate by their efforts. It is then a question, as in salvage at sea, no cure, no pay. 'When the efforts of attorneys cause a material increase in the bankruptcy estate, or, as here, create it, they should be well re-

warded; otherwise there will not be any incentive to attorneys to put forth their best efforts in cases which appear unpromising.'"

Numerous cases[1] have allowed attorney's fees based on contingent fee contracts where the bulk of the work performed by the attorney was prior to the bankruptcy proceeding. Most of these cases grounded their view upon the equitable power of the court, recognizing that the attorneys had a valid charging lien under state law.

■ Appellants have attempted to distinguish these cases with the argument that California law does not recognize attorney's liens, citing *Desser, Rau and Hoffman v. Goggin*, 240 F.2d 84 (9th Cir. 1957). In *Desser*, the court, in deciding the validity of plaintiff's claim to certain funds of the debtor held by plaintiff law firm for the account of the debtor, did observe in passing that California law does not recognize the attorney's charging lien, but based its holding on other grounds. In that case, the court's primary consideration was that plaintiff had not created the fund by its professional effort and was a mere stakeholder. Therefore, the court correctly found that plaintiff had no protectable interest in the fund, and in fact no interest other than the desire to be paid therefrom. However, in *Isrin v. Superior Court of Los Angeles County*, 63 Cal.2d 153, 45 Cal.Rptr. 320, 323–4, 403 P.2d 728 (1965), it was held that an equitable security interest in the proceeds of litigation will be imposed in California if the parties have manifested an intention that the attorney shall look to the judgment as security for his fee, even though the word "lien" has not been used. Therefore, because appellee under his contingent fee contract was entitled to look to the judgment for his compensation, he retained an effective equitable lien on the proceeds of the settlement once the funds came into existence. Although the equitable lien attached after the bankruptcy proceedings were in progress, it had taken effect on the date service commenced.

*Hanna Paint Manufacturing Co. v. Rodey, Dickason, Sloan, Akin and Robb*, 298 F.2d 371, 373 (10th Cir. 1962).

■ Inasmuch as appellee is entitled to an equitable line, the court properly segregated funds from the settlement for the payment of attorney's fees. *In the Matter of Land Investors, Inc.*, 544 F.2d 925, 928 (7th Cir. 1976).

■ The fees awarded to appellee are not excessive as a matter of law. Reasonableness of fees awarded in bankruptcy are generally determined in light of the benefit conferred on the estate, *In re Mullendore, supra;* 3A Collier on Bankruptcy, ¶ 62.32, p. 1622 (14th Ed. 1975), and the spirit of economy pervasive throughout the Bankruptcy Act. *Cle-ware Industries, Inc. v. Sokolsky*, 493 F.2d 863, 868 (6th Cir. 1974). The record reveals that the referee in awarding appellee his fee considered the complexities of the Northrop case which involved issues in admiralty, anti-trust, and contract; the volume of pleadings, motions, and discovery; the length of time invested by the attorneys; and the benefit accrued to the debtor. He also considered the standing and ability of counsel and the public interest in attracting special counsel to work with the bankruptcy court. The referee weighed the benefits conferred upon the debtor in the context of the then ongoing Chapter XI proceedings. Debts were paid from the proceeds of the settlement, the satisfaction of which were necessary for a continuation of the business of the debtor, and a substantial fund was created from the settlement to meet operating business expenses. The referee's use of the terms of the contingent fee contract as a guideline in the fixing of the fee was not improper since he did not regard himself as bound by the percentage of the compensation therein contained.

■ While an award of attorney's fees in a bankruptcy proceeding should generally be governed by a spirit of economy, in evaluating the value of work performed by

---

1. *In re Mullendore*, 527 F.2d 1031 (10th Cir. 1975); *In the Matter of Land Investors, Inc.*, 544 F.2d 925 (7th Cir. 1976); *United States v. Transocean Airlines, Inc.*, 356 F.2d 702 (5th Cir.

1966); *Sherman v. Buckley*, 119 F.2d 280 (2nd Cir. 1941), *cert. denied*, 314 U.S. 657, 62 S.Ct. 110, 86 L.Ed. 527 (1941); *In re Prudence Co., Inc.*, 96 F.2d 157 (2nd Cir. 1938).

special counsel, the court must also consider the equally compelling consideration of allowing fees commensurate with the value of the work performed by special counsel. This consideration is essential to insure that special counsel will not be discouraged and desist from undertaking highly-skilled labors in behalf of clients who have become debtors in bankruptcy. In this case, the referee correctly recognized and balanced the competing factors which he was required to consider in the fixing of appellee's fee.

Trustee for the debtor following bankruptcy has raised the additional issue that an increased degree of contribution toward the awarded attorney's fee should have been required from the benefitted creditors as a term of the settlement. In view of the prior discussion regarding the benefit received by the debtor in possession and in light of the fact that a degree of contribution was provided for in the settlement, terms of the settlement are not inequitable in that respect.

In affirming the award of the referee, the court cautions that the effect of this decision depends upon the result reached in the pending appeals from the referee's order approving the Northrop settlement, which appeals have yet to be heard and determined.