**Maria VILLEGAS, Individually and as Representative and Beneficiary of the Estate of Jose M. Villegas, Relator,**

v.

**The Honorable Robert PATE, Judge of the 28th District Court of Nueces County, Texas, Respondent.**

No. 13–95–468–CV.

Court of Appeals of Texas,
Corpus Christi.

Jan. 11, 1996.

Rehearing Overruled Jan. 11, 1996.

---

Willard G. Holgate, Corpus Christi, for relator.

Diane M. Henson, Austin, William W. Dibrell, Graves, Dougherty, Hearon & Moody, Austin, Lev Hunt, Hunt, Hermansen, McKibben & Barger, Corpus Christi, for real parties in interest.

Before SEERDEN, C.J., and DORSEY and HINOJOSA, JJ.

## OPINION

SEERDEN, Chief Justice.

In this original mandamus proceeding, Maria Villegas, individually and as representative and beneficiary of the estate of Jose M. Villegas, complains that the trial court abused its discretion in sustaining a contest to her affidavit of inability to pay costs of appeal of the underlying case. We conditionally grant a writ of mandamus.

Villegas originally brought the underlying lawsuit against Griffin Industries, Inc., Larry Findley, R.T. McNorton, F. Garza, D. Gonzales, and H. Villarreal, for numerous causes of action arising out of allegedly false accusations and the malicious prosecution of Villegas for theft of cooking grease from a restaurant. In the course of a jury trial, the trial court granted a directed verdict for the defendants and signed a final take-nothing judgment on June 15, 1995. Villegas filed a motion for new trial on July 13, 1995, and a timely affidavit of inability to pay costs of appeal on September 11, 1995. The defen-

dants and the court reporter filed contests to the affidavit on September 18, 1995. Defendants also moved to extend the time to hear the contest, which the trial court granted by a signed order on September 19, 1995, setting the hearing for October 5, 1995.

At that hearing, Maria Villegas testified that she has been receiving some $500 per month in social security benefits for the last two years in the form of disability benefits and supplemental security income, that she is on both Medicaid and Medicare, and that she has no other income or property aside from her clothes and a 1985 Buick worth some $500. She rents a one-bedroom apartment for $360 per month, where she lives with her unemployed adult daughter and her grandson who are on food stamps and are able to buy groceries for Villegas. Villegas also pays some $60 per month for her electric bill. She has a number of outstanding debts, including a federal tax lien against her for $6,986.17, $2,500 in attorney's fees in connection with criminal charges that had been filed against her and subsequently dismissed, and some $700 in fees due to her attorney for other services rendered.

Villegas further testified that she has her G.E.D. and has worked in the past as a secretary and a cleaning person, and has managed a four-member cleaning crew in a bank cleaning business, but that she has been unemployed since 1991 and has not applied for any kind of employment in the last two and a half years because of her disabilities, including arthritis in her fingers and hand problems, and because of the medication that she is under for her illnesses. However, as a requirement for her receipt of disability benefits, the Texas Rehabilitation Commission has been sending her to school as a full-time student at Texas State Technology College from 1993 to 1995, and now to Bee County College in the evenings for four hours a week, as she works toward an Associates Degree in Building Construction.

Villegas stated that no one has agreed to pay her costs of the present appeal and she has no way of raising the money to pay costs of appeal, but that she has not tried to get a bank loan to pay costs of appeal, nor has she tried to sell an interest in her lawsuit.

On cross-examination of Villegas, the defendants questioned her about misstatements that she had made to various doctors in connection with her receipt of government benefits, to the effect that she was not living with a husband, when in fact she was living with a common-law husband who was also supporting a previous family but provided no support to Villegas. However, assuming that Villegas did misrepresent her family situation in the past to a physician having some connection with her entitlement to government benefits, the defendants failed to draw any connection between that misrepresentation and Villegas' present entitlement to benefits, especially since her common-law husband is now deceased.

Villegas' attorney, William Holgate, testified that he had represented her in a prior criminal action and that she later requested him to represent her in the present civil action. Villegas signed a contingent fee contract with Holgate for 40% of the amount recovered in the civil action and for an additional "reasonable sum" in case of appeal. As part of the contract, Villegas agreed to pay all court costs, and Holgate specifically told her that she would be responsible for costs.[1]

However, when Holgate later determined that Villegas could not pay costs and Holgate did not have the money to advance the costs of suit, he referred the case to another attorney, Mills Latham, who did agree to pay the costs and with whom Holgate agreed to split attorney's fees. Latham paid the filing fee, service fee, and jury fee, and the costs of several depositions. However, when Latham decided that he no longer wanted to pay the costs of the case, he gave it back to Holgate who then paid only minimal amounts to try the case.

Holgate testified that he could not put a present value on Villegas' claims for actual and punitive damages in the underlying case

---

1. The contract further provides for payments to be advanced from time to time to Holgate upon request, and, to the extent that such advance-ments are not sufficient to pay costs, Holgate is granted 12% interest and a lien against the cause of action to secure payment.

because they are too speculative. However, Holgate further testified that, if he had the money he would probably advance the costs of appeal to Villegas. No testimony was offered concerning Holgate's present financial condition.

Immediately after the hearing, the trial court signed an order sustaining the contest, about which Villegas complains by the present mandamus proceeding.

■ Mandamus will lie to correct the trial court's erroneous ruling on the contest of a pauper's affidavit and his refusal to grant a free statement of facts to an applicant who has proven her right to appeal as an indigent. *Jones v. Stayman,* 747 S.W.2d 369, 370 (Tex. 1987).

■ Indigency provisions, like other appellate rules, have long been liberally construed in favor of a right to appeal. *Jones v. Stayman,* 747 S.W.2d 369, 370 (Tex.1987); *see also Commercial Credit Corp. v. Smith,* 143 Tex. 612, 187 S.W.2d 363 (1945). The test for determining entitlement to proceed in forma pauperis is whether the record shows that the appellant would be unable to pay if he really wanted to and made a good-faith effort to do so. *Allred v. Lowry,* 597 S.W.2d 353, 355 (Tex.1980); *Goffney v. Lowry,* 554 S.W.2d 157, 159 (Tex.1977); *Pinchback v. Hockless,* 139 Tex. 536, 164 S.W.2d 19, 20 (1942). The Texas Supreme Court further explained the circumstances under which an appellant would be considered indigent for purposes of appeal:

> (I)f a laborer was barely earning the necessities of life for himself and family, ordinarily he should not be required to mortgage his hand tools or household furniture in order to raise funds to pay the court costs. On the other hand, if a party has a credit rating that will enable him to borrow the money, or if he is earning a substantial income, although he is expending it as rapidly as it comes in, or if he owns an automobile or truck or other valuable property, although exempt from execution, which he could mortgage or otherwise dispose of and thereby secure the necessary funds without depriving himself and his family of the necessities of life, he should

be required to pay the costs, or give security therefor.

*Goffney,* 554 S.W.2d at 159 (quoting *Pinchback,* 164 S.W.2d at 20).

■ Specifically, the fact that any individual is dependent upon the charity of the public afforded through the various welfare programs is, by itself, prima facie evidence that the person is financially unable to pay the court costs or give security therefor. *Goffney v. Lowry,* 554 S.W.2d 157, 159–60 (Tex.1977); *Sansom v. Sprinkle,* 799 S.W.2d 776, 777 (Tex.App.—Fort Worth 1990, orig. proceeding). Once appellant establishes prima facie proof of her inability to pay by showing that she is dependent upon public charity, the opposing party then bears the burden of introducing some evidence either rebutting appellant's claim to dependence on public charity or of the existence of other funds available to appellant to pay for the appeal. *See Sansom,* 799 S.W.2d at 778.

■ Moreover, an indigent appellant is only required to show that she is herself unable to pay the costs of appeal, not that her relatives or friends are unable to do so. Money which relatives or friends may be willing to extend to appellant in spite of the fact that she has no means or expectancy of repayment at any foreseeable time, are not "bona fide loans" and should not be considered in determining the ability of the appellant to pay for her appeal. Appellant has no burden to exhaust all potential sources of charity in order to show her inability to pay court costs. *Allred,* 597 S.W.2d at 355; *Goffney,* 554 S.W.2d at 160.

Following the proposition that an indigent appellant is not required to show that others are unable to pay his costs of appeal, several appellate courts have held that an indigent appellant is likewise not required to show the inability of his attorney to pay, and that such an attorney is not, because of his contingent fee contract, obligated to pay the costs of appeal. *Regalado v. H.E. Butt Grocery Co.,* 863 S.W.2d 107, 112 (Tex.App.—San Antonio 1993, no writ); *Underwood v. Cartwright,* 795 S.W.2d 34, 36 (Tex.App.—Houston [1st Dist.] 1990, orig. proceeding); *Modern Liv-*

*ing, Inc. v. Alworth,* 730 S.W.2d 444, 446 (Tex.App.—Beaumont 1987, orig. proceeding); *see also International & G.N. Ry. Co. v. Reeves,* 35 Tex.Civ.App. 162, 79 S.W. 1099 (1904, writ ref'd); *Galveston, H. & S.A. Ry. Co. v. Mathes,* 73 S.W. 411 (Tex.Civ.App. 1903, no writ); *The Oriental v. Barclay,* 16 Tex.Civ.App. 193, 41 S.W. 117 (1897, no writ).[2]

However, one appellate court has disagreed and held that an otherwise indigent party is not entitled to appeal as a pauper when he fails to demonstrate that he could not secure funds from his attorney to prosecute his appeal, on the ground that a party who can secure the money from any legitimate source for the costs of appeal should not be allowed to proceed as an indigent. *Culpepper v. Coker,* 769 S.W.2d 373, 375 (Tex.App.—Houston [14th Dist.] 1989, orig. proceeding). Culpepper had a contingency fee contract with his lawyers, who had advanced costs for litigation, paid his medical bills, and paid some expenses for travel and lodging in connection with the case. *Culpepper* disagreed with *Modern Living* and its progeny on the ground that it does not matter whether or not an attorney with a contingency fee interest is considered a party to the proceeding, but only whether he is a source from which appellant may secure the funds necessary to prosecute the appeal. *Culpepper,* 769 S.W.2d at 375.

Finally, the *Underwood* court, though it agreed with *Modern Living* in failing to require the attorney to pay appellate costs, followed a middle course by attempting to distinguish *Culpepper* on the ground that the attorney's fee in *Underwood,* though contingent, was based on an hourly rate rather than a percentage of the amount recovered. *Underwood,* 795 S.W.2d at 36.

We agree with the *Modern Living* court that the ability of the attorney to pay for an appeal should not defeat his client's status as a pauper, though we acknowledge that there may be cases in which the client's claim is objectively valuable enough to be considered an asset with which the client should reasonably be able to secure funds from an attorney.

A claim for money damages is an interest in property. *See Buck v. Rogers,* 709 S.W.2d 283 (Tex.App.—Corpus Christi 1986, no writ). If the value of the claim is sufficiently certain this asset may be sufficient to deny the party indigency status; however, in this case, where the trial judge granted an instructed verdict against appellant, it is clear the court could not consider the value of the claim sufficient to lift the plaintiff from such status.

The real party at interest argues that relator offered no testimony that she had been refused loans for her appeal by any financial institution. One should not be required to do a useless or vain thing. The application for a loan by a party who is unemployed, on public assistance, with no assets, for the purpose of paying the costs of appeal from a judgment based on an instructed verdict would be useless and a vain waste of time for all concerned.

In the present case, Villegas clearly showed herself to be indigent and unable to pay the costs of appeal. Moreover, the only testimony concerning the value of her lawsuit came from her attorney's own conclusion that it was too speculative to assign any particular value to it. Accordingly, the trial court abused its discretion in sustaining the contest to her affidavit of inability.

**2.** Other states and the federal courts have also determined that an indigent client should not be denied the right to appeal as a pauper merely because his attorney is financially able to pay the costs. *See Adkins v. E.I. Du Pont de Nemours & Co.,* 335 U.S. 331, 338–44, 69 S.Ct. 85, 89–91, 93 L.Ed. 43 (1948); *Flowers v. Turbine Support Division,* 507 F.2d 1242, 1245 (5th Cir.1975); *Isrin v. Superior Court of Los Angeles County,* 63 Cal.2d 153, 45 Cal.Rptr. 320, 327–28, 403 P.2d 728, 735–36 (1965). These cases discuss numerous reasons for ignoring the wealth of the lawyer in determining the client's status as a pauper, including the threat that poor clients will be forced to hire only poor lawyers to represent them on appeal, *Adkins,* 335 U.S. at 342, 69 S.Ct. at 91, the disincentive for lawyers to take the appellate cases of poor clients, *Flowers,* 507 F.2d at 1245, and the inability of poor clients with marginal claims to secure representation and appeal of their cases. *Isrin,* 45 Cal.Rptr. at 327–28, 403 P.2d at 735–36.

We conditionally grant a writ of mandamus directing the trial court to vacate its order sustaining the contest to her affidavit of inability to pay costs on appeal. However, the writ will not issue unless the trial court fails to comply with the opinion of this Court.[3]

---

**3.** In view of our disposition of this mandamus action, we overrule as moot Villegas' motion for rehearing on her motions to extend the time or stay the deadline to file an appeal bond in connection with the underlying appeal.